TAYLOR, *Administrator*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

Railroad: ACTION FOR DEATH OF PERSON : CONTRIBUTORY NEGLIGENCE. One who recklessly or carelessly goes upon the track of a railroad company, without looking or listening for an approaching

train, and is thereby killed, when, by looking or listening, he would have been apprised of the approach of the train, is guilty of such contribitory negligence as to preclude a recovery in an action for his death, notwithstanding the train was, at the time, running at a rate of speed forbidden by an ordinance of the city in which the accident occurred, and also failed to ring its bell.

## Appeal from St. Louis Court of Appeals.

REVERSED.

*E. A. Andrews* for appellant.

(1) The demurrer at the close of plaintiff's case should have been sustained, because the plaintiff on her evidence was not entitled to recover. *Maher v. Pacific Railroad*, 64 Mo. 269, and authorities there cited; *Harlan v. St. L., K. C. & N. Ry. Co.*, 64 Mo. 480, and authorities there cited; *Hallihan v. H. & St. Jo. Ry. Co.*, 71 Mo. 113, and authorities there cited; *Lenix v. Mo. Pac. Ry. Co.*, 76 Mo. 86, and authorities there cited; *Powell v. same*, 76 Mo. 80. (2) The demurrer at the close of the whole case should have been sustained, because the plaintiff, on all the evidence, was not entitled to recover. Same authorities. (3) The first instruction given at the request of the plaintiff was erroneous. (4) The third instruction given at the request of the plaintiff was erroneous in this, that it was not supported by necessary allegations in the petition, or by the evidence, and is in conflict with settled law. Same authorities cited.

*A. R. Taylor* for respondent.

(1) Sullivan was guilty of no negligence in approaching and attempting to cross the track. He used his senses of sight and hearing, without avail, to discover the approach of a train, because there was an ob-

struction both to his view and his ability to hear.
(2) There is no evidence that Sullivan could or did hear
the train until notifi d by McKane of its approach.
(3) If the deceased did use his senses of sight and hear-
ing, at the time of approaching and stepping upon the
track, and at that time could neither see nor hear the
approaching train, and if then, but for the unexpected
and unauthorized s^ ^ed of the train, he could safely have
passed the track, he was guilty of no negligence. *Har-
lan v. Ry. Co.*, 64 Mo. 482 ; *Fletcher v. Railroad*, 64
Mo. 490 ; *Henze v. Railroad*, 71 Mo. 640. (4) The true
rule as expounded by the court is, (*a*) that a person who
attempts to cross a railroad track must, before doing so,
if a pedestrian, use his senses of sight and hearing in an
ordinarily prudent manner. And the law, in the first
instance, presumes in favor of the injured person that
he did this thing. (*b*) That after such pedestrian has-
used such lawfully required diligence, in approaching
and getting upon the track, he has a right to assume that
the railroad company will only operate its train accord-
ing to the provisions of a law regulating the same, and
may proceed to cross the track upon such assumption.
(5) While the negligence of the railroad in failing to
obey the law as to the operation of its trains will not
make it liable where injury is caused by the failure of
the injured person to use due care, yet where the injured
person has used due care, and his only fault was that he
did not anticipate the negligence or wrongful act of the
company, it cannot be said that he was guilty of con-
tributory negligence. It is not contributory negligence
to fail to anticipate that the servants of the railroad
would run the train in violation of the law. 2 Thomp.
on Neg., p. 1172, secs. 18, 19, and cases cited. Where a
pedestrian listens and looks for an approaching train,
and having exercised what care he might, he relies upon
an observance by the railroad of the law, and proceeds
to cross the track and is injured, he can recover. Sec.

19, *supra; Ernst. v. Railroad*, 35 N. Y. 28-9; *Railroad v. Hagan*, 47 Pa. 248. As the evidence tended to show that Sullivan did use the diligence required by law, and fell a victim to the fact that he could not and did not anticipate that defendant would violate the law, in running its train at an excessive rate of speed, it follows necessarily that the defendant should be held liable. *Henze v. Railroad, supra.*

HENRY, C. J.—This action was originally commenced by the intestate, Margaret Sullivan, to recover the statutory penalty of five thousand dollars for the death of her husband, in 1878, alleged to have been caused by the negligence of the defendant in operating a train of its cars on its track near the union depot in the city of St. Louis. Plaintiff had a judgment, which, on appeal to the St. Louis court of appeals, was affirmed *pro forma*, and defendant has prosecuted an appeal to this court.

The only witness introduced by plaintiff who saw the collision was Louis C. McKane, and his testimony was to the effect that Sullivan was in the employment of the Union Railway and Transit company, as a lamplighter, and that it was his duty to put up lamps in the evening and take them off the targets in the morning in the St. Louis Union Depot yards, which extend from Twelfth to Twenty-first streets, and contain thirteen parallel tracks, running a few feet from each other, and connected by many switches upon and from the targets of which Sullivan put up and took down the lamps, which he kept in a shanty a little west of the Fourteenth street bridge, which crosses these tracks. That deceased was injured between six and seven o'clock, on the morning of the twenty-ninth of October, 1878. That at the time he was injured, witness was between two and three hundred feet east of him, walking between tracks twelve and thirteen. That deceased was coming from

the northwest, "walking kind of down the track" over toward his shanty. That witness saw him get on the track and saw the train coming from the west, and threw up his lamp and hallooed to Sullivan to get off the track. Sullivan had just then stepped upon the track and was walking down, and seemed to be going across the track, and when witness hallooed to him, Sullivan looked and threw his body off of the track. The engine was then within fifty or one hundred feet of him. He stepped onto the track, walked a few steps down, and was still going right on. Sullivan was between the witness and the engine which struck him, and witness and Sullivan were facing each other. McKane thought that the train was running fifteen miles an hour, and heard no bell ringing on the engine. He also testified that when Sullivan stepped upon the track he could have seen up the track from which the train was coming over seventy-five or one hundred feet, but that he could not have seen the train until he got upon the track, owing to the obstruction presented by some cars on a switch track near by.

There is no evidence tending to prove that Sullivan, before or after he stepped upon the track, looked or listened for an approaching train. Respondent's counsel insists that he did look, but we have carefully examined the testimony and find nothing in it to justify the contention. "He had his head up, looking along the track, as he stepped upon it," says the counsel, but the testimony is that he stepped upon the track from behind some cars on a side-track, started in a southeast direction diagonally across, and rather down the track, towards his shanty, and never turned his head toward the train coming from the west until McKane called his attention to it. The attorney for plaintiff asked the witness the following suggestive question: "You say you saw him when he approached the track, and he looked up and down the track?" But the witness had not said

it, nor did he ever say it, but studiously avoided testify-ing to that fact.

At the close of plaintiff's case, the defendant asked the court to direct a verdict for defendant, which the court refused. The case, in its main features, closely resembles that of *Harlan v. Ry. Co.*, 64 Mo. 480, in which Judge Napton, delivering the opinion of the court, said : " A person who goes on a railroad track, or pro-poses to cross it, must use his eyes and ears to avoid injury. A neglect of regulations in regard to bell ring-ing may amount to negligence in law, on the part of the railroad employes, but that does not absolve strangers, who propose to cross the track, from ordinary care." In that case, the deceased stepped upon the track from be-hind some cars standing on another track, which ob-structed his view of the engine which struck him. The bell was not rung, and it was impossible, after deceased got upon the track, to stop the train in time to avoid striking him.

There was no evidence in the case at bar tending to prove that the deceased ever looked or listened for an approaching train, but, on the contrary, the testimony of McKane clearly proves that if he had paused a mo-ment and looked or listened, he would have seen or heard the train. When he got upon the track, the engine which struck him was within fifty or one hundred feet of him, and had he then stopped and looked, there was nothing to prevent him from seeing it, and if he had listened, without looking, he would have heard it. If he looked he must have seen the train, and determ-ined to take the chances of crossing the track without being struck. The negligence of the company in run-ning the train at a speed forbidden by the ordinance of the city, and in not ringing the bell, may be conceded, although the only evidence that the bell was not rung is that of McKane, who testified that he did not hear it ; yet, if Sullivan recklessly or carelessly went upon the

track, without looking or listening for an approaching train, when by looking or listening he would have been apprised of its approach, he was guilty of such contributory negligence as precludes a recovery. It is utterly impossible to distinguish this from similar cases in which this and other courts have held that there could be no recovery. *Harlan v. Railroad, supra; Maher v. Railroad,* 64 Mo. 269; *Zimmerman v. Railroad,* 71 Mo. 476; *Hallihan v. Railroad,* 71 Mo. 113; *Lenix v. Railroad,* 76 Mo. 86; *Powell v. Railroad,* 76 Mo. 80; *Railroad v. Heileman,* 49 Pa. St. 60; *Railroad v. Beale,* 73 Pa. St. 504; *Railroad v. Crawford,* 24 Ohio St. 631; *Dascomb v. Railroad,* 27 Barb. 221; *Wilcox v. Railroad,* 39 N. Y. 358; *Railroad v. Houston,* 95 U S. 697. The cars on the side-track which prevented Sullivan from seeing the train which struck him also prevented the men on the train from seeing him, until he came upon the track, and, running at fifteen miles an hour the train could not have been stopped within a shorter distance than five hundred feet, as McKane testified.

Sullivan had for some time been employed in the St. Louis Union Depot yards, and his business required him daily to pass over and among the numerous railroad tracks laid there. He knew the danger to be apprehended from passing trains and engines, and the care demanded of those whose business required them to pass along and over those tracks. By frequent exposure to danger, however, men become indifferent to it, and hazard their lives by taking risks which others less accustomed to the dangers would carefully avoid. Sullivan, no doubt, lost his life by his indifference to perils with which he had become familiar. Upon no other theory can his conduct be explained, and without overruling numerous adjudications of this court, which are in entire harmony with the best considered cases of other American and English courts, we cannot affirm this

judgment. It is, therefore, reversed. All concur except Black, J., who dissents.

BLACK, J., DISSENTING.—The deceased had, beyond all doubt, the right to cross over the tracks, and it became and was his duty so to do. The surrounding circumstances, as they existed at the time of the injury, are important elements in the case. Dougherty was, at the same time and place, engaged with a switch engine in setting cars on one of their tracks. Just then a stock train of the North Missouri road passed, and then came the defendant's train. The witness, McKane, hallooed. Sullivan, the deceased, then, it is said, turned his head to the right, saw the train, and threw his body off, but not so as to prevent being hit. Numerous objections were interposed to the evidence of this witness, and it is not strange that some of his answers are not direct. A part of his examination was as follows: "A. Yes, sir, he was coming from northwest going in kind of a southeast direction, and he stepped on the track, walked a few steps down, and was still going right. Q. As he stepped on the track and you hallooed, did he have his head up, looking around, or down? A. He seemed to be walking like any other man. Q. How was he looking, how was his head, his face—up, or down? A. Yes, his face was up, looking along the track. Q. How far could he see from where he was when he stepped upon the track? A. He could not see more than seventy-five nor over a hundred feet. Q. That was on account of these cars being in his way that were moving over on the other track? A. Yes. Dougherty was pulling in the Yeager mill cars. Q. Could he see the approaching train on account of these cars? A. The way I seen him coming on the track, he could not, until after he got on the track that he was struck on. From the way he entered the track from the time that I first seen him, I

seen him when he first got on what they call the accommodation track."

This testimony surely tends to show that the deceased was using his eyes and ears, for he was, it is said, walking with his head up, looking along the track, and he seems to have heard the witness. There is no evidence, certainly none disclosed by the abstracts, tending in the least to, show any want of care prior to the moment of stepping on the track. After that, he was going about his business, carrying his lamp, apparently using his senses of sight and hearing. The train, it is said, was within fifty or one hundred feet of him when he stepped on the track, and was running at a rate of speed, if the witness tells the truth, which was in flagrant violation of the ordinance. Now, if the deceased had seen the train in time to get off, it was his plain duty so to do, though it was running at an unlawful speed. It is clear that he did not see it in time. At such a place and under such circumstances, as are here disclosed, may not the employe, who must promptly discharge his duties, rely to some extent, at least, upon the fact that others, having equal rights to use the same ground at the same time, will give some heed to the plain dictates of position law? If he cannot do this, then there is not much protection against such violations of the law. Ordinary eyes and ears are not on the alert for violation of the law.

It is no far fetched conclusion to say, from this testimony, that this man was killed because of the unlawful rate of speed at which the train was going. Quite likely the engineer did not see him in time to stop, and why? Because he was committing a gross act of negligence. If Sullivan was using that care, which a prudent person would have used in a like situation and under like circumstances, he was not guilty of negligence. This question was submitted to the jury fairly enough

by the court on its own motion. Defendant asked no instructions, save demurrers to the evidence. The jurors have twice found for the plaintiff. In my opinion, there was sufficient evidence upon which to submit the cause, and the jurors might well have found for the plaintiff, if they believed the plaintiff's testimony. To determine whether the evidence was true or not was their duty, not ours.

In my opinion, the judgment should be affirmed.