KREIS v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, February 21, 1899.*

**Railroads:** ACCIDENT NEAR TRACK: CONTRIBUTORY NEGLIGENCE. An adult woman was proceeding along a pathway between railway tracks to a station, with an umbrella over her head, which obstructed her view, and, knowing that a train was approaching behind her, suddenly, without looking, rushed to a point where a collision was inevitable. She was not in danger so long as she followed the path. The company had no reason to anticipate that she intended to cross the track, or venture too near the cars, until they were so close that a collision could not be avoided. *Held,* that in an action by the husband for damages for her death, an instruction in the nature of a demurrer to the evidence was proper.

*Appeal from Jefferson Circuit Court.*—HON. JOHN M. WOOD, Special Judge.

REVERSED.

MARTIN L. CLARDY and LOUIS F. DINNING for appellant.

(1) There was no evidence authorizing a submission of this case to the jury, and the instructions in the nature of demurrers, asked by defendant, ought to have been given. In none of the cases cited below do the facts show such recklessness upon the part of the injured person as is disclosed in this case, and in all of them it was held that the contributory negligence of the injured person prevented a recovery. Maxey v. Railroad, 113 Mo. 1; Stanley v. Railroad, 114 Mo. 606; Prewitt v. Eddy, 115 Mo. 283; Jackson v. Railroad, 104 Mo. 459; Kelsay v. Railroad, 129 Mo. 362; McManamee v. Railroad, 135 Mo. 440; Payne v. Railroad,

*NOTE.—Decided December 23, 1898. Motion for rehearing denied February 21, 1899.

136 Mo. 562; Bender v. Railroad, 137 Mo. 240; Bobb v. Railroad, 138 Mo. 172; Huggart v. Railroad, 134 Mo. 673; Lane v. Railroad, 134 Mo. 4; Hicks v. Railroad, 124 Mo. 115; Yancey v. Railroad, 93 Mo. 433; Dunkman v. Railroad, 95 Mo. 282; Williams v. Railroad, 96 Mo. 225; Rine v. Railroad, 88 Mo. 392; Frick v. Railroad, 75 Mo. 595; Moody v. Railroad, 68 Mo. 470; Maher v. Railroad, 64 Mo. 267. (2)   It has been held by this court that, if a railroad licenses or acquiesces in the use of its track or premises by others, it must exercise reasonable care, not only to avoid injuring them after they are discovered to be in danger, but also to keep a careful lookout to discover and avoid injury to those who may be expected to be upon their right of way or premises.   Lynch v. Railroad, 111 Mo. 601; Fiedler v. Railroad, 107 Mo. 645.    This rule, when applied in favor of those who are walking along a right of way or railroad track is against the weight of authority, and, as stated in Elliott on Railroads, section 1250, is impracticable and in violation of the true principle that should govern such cases.   (3)   The court ought to have given the following instruction offered by defendant:   "The court instructs the jury that the following averments, to wit:   'And plaintiff states that at the time his said wife was so walking upon the said pathway and track of the defendant, and in imminent peril of being struck by said train of cars, the said engineer and fireman in charge thereof became aware of her peril of being struck in time to have enabled them by the exercise of ordinary care to stop said train, or, by the exercise of ordinary care, could have become aware of her peril in time to have done so, but that they failed to exercise such care and stop said train, and that by reason of such failure to stop said train, his said wife was killed as aforesaid,' were not contained in the original first two petitions filed herein; but that the said averments were first made in the second amended petition of plaintiff.   Now, if the jury

find from the evidence that more than one whole year had elapsed from the date of the killing of plaintiff's wife till the date of the filing of said second amended petition, then and in that event the jury are instructed that they can not find a verdict based upon said averments, nor upon the evidence introduced to establish said averments." R. S. 1889, secs.4425,4429; Woolfolk v. Woolfolk, 33 Mo. 110; Skinner's Ex'r v. Hutton, Ib. 244; Ticknor v. Voorhies, 46 Mo. 110; Buel v. St. Louis Trans. Co., 45 Mo. 562; Lottman v. Barnett, 62 Mo. 159; Basye v. Ambrose, 28 Mo. 46; Ward v. Davidson, 89 Mo. 445; McManamee v. Railroad, 135 Mo. 447; Watson v. Railroad, 133 Mo. 246; Waldhier v. Railroad, 71 Mo. 515; Schneider v. Railroad, 75 Mo. 295.

L. FRANK OTTOFY for respondent.

(1) This court having decided on the first appeal that the demurrer to the evidence at the close of the whole case did not lie, and on this appeal the evidence being substantially the same, the point now made, "that there is no evidence to support the verdict or that the instructions approved on the first appeal are erroneous" is *res judicata*. Boettger v. Scherpe & Koken, 136 Mo. 536; Conroy v. Vulcan Iron Works, 75 Mo. 652; Bank v. Taylor, 62 Mo. 339; Gwin v. Waggoner, 116 Mo. 151; Perkins v. Fielding, 119 Mo. 156; Cherry v. Railroad, 61 Mo. App. 307; Masterson v. Railroad, 58 Mo. App. 575; Fink v. Ins. Co., 66 Mo. App. 514; Carpenter v. McDavitt, 66 Mo. App. 7; Bealy v. Blake's Adm'r, 1 Mo. App. Rep. 305; Leete v. State Bank, 42 S. W. Rep. 1074. One new trial having been granted in this case on the ground that the verdict is against the weight of evidence, a second new trial could not be granted on that ground. Kreis v. Railroad, 131 Mo. 544; McFarland v. Accident Ass'n, 124 Mo. 222; Spohn v. Railroad, 122 Mo. 1. All the evidence shows that she positively did not cross directly in front of a moving train. She was in

danger walking on the ends of the ties while the train traveled eight hundred feet which distance she could have been seen by the engineer and he could have stopped within one hundred and fifty feet. The failure to give her a timely warning by alarm whistle or danger signal was negligence. The statutory signals are not alone required. Dixon v. Railroad, 109 Mo. 429; Railroad v. Watkins, 26 S. W. Rep. 761; Johnson v. Lake S. T. & T. Co., 86 Wis. 71; Guenther v. Railroad, 95 Mo. 299; Railroad v. Tinkham, 44 S. W. Rep. 439; Railroad v. Barber, 31 S. W. Rep. 482. And the railroad company owes this duty even to a party who is a trespasser and not a licensee, as is the case here. Sinclair v. Railroad, 133 Mo. 233; Mathews v. Railroad, 63 Mo. App. 569; Chamberlain v. Railroad, 133 Mo. 587. (2) The engineer and fireman could have seen her in a position of danger over eight hundred feet from the point of the accident. She was not a trespasser. She and others had for a long space of time, by the tacit permission of the defendant company, been accustomed to use the path and track for the purpose of going to and from the station. She was therefore a licensee, and defendant under the well settled rule in this State owed her a duty. Even though she was guilty of negligence they were bound to anticipate her in the position of danger, and if they might have discovered her by the exercise of ordinary care and averted the injury, the defendant is liable regardless of her negligence. Le May v. Railroad, 105 Mo. 370; Williams v. Railroad, 96 Mo. 282; Gurley v. Railroad, 104 Mo. 228; Hanlon v. Railroad, 104 Mo. 390; Lloyd v. Railroad, 128 Mo. 595; Powell v. Railroad, 59 Mo. App. 634; Sullivan v. Railroad, 97 Mo. 119; Guenther v. Railroad, 95 Mo. 290; s. c., 108 Mo. 22; Lynch v. Railroad, 111 Mo. 610; Frick v. Railroad, 75 Mo. 610; Fiedler v. Railroad, 107 Mo. 651; White v. Railroad, 34 Mo. App. 63; Donohue v. Railroad, 91 Mo. 365; Eswin v. Railroad, 96 Mo. 297. (3) The amended petition is

no departure from the original pleading. Even though it was, defendant having answered and gone to trial on the issues thus raised waived all objections to the propriety of allowing the amendment. Scovill v. Glasner, 79 Mo. 454; Hurley v. Railroad, 57 Mo. App. 680; Gelatt v. Ridge, 117 Mo. 553; Silver v. Railroad, 21 Mo. App. 9; Spurlock v. Railroad, 93 Mo. 530; s. c., 104 Mo. 660. (4) By pleading to the merits defendant waives everything except that the petition does not state facts sufficient to constitute a cause of action and that the court has no jurisdiction over the subject-matter. Seckinger v. Mfg. Co., 129 Mo. 590; Paddock v. Somes, 102 Mo. 226; Hanlon v. Railroad, 104 Mo. 391; Kellny v. Railroad, 101 Mo. 76.

SHERWOOD, J.—Action for damages for death of wife caused by coming into collision with a railroad train; trial, with the usual result, necessitated an appeal by defendant company.

This cause has been here before, 131 Mo. 533. It came up then on appeal of plaintiff because the trial court set aside the verdict and granted a new trial to defendant. In concluding an opinion which affirmed the judgment of the lower court, it was observed: "The motion for a new trial must have been sustained upon the ground of the insufficiency of the evidence to support the verdict; and in sustaining the motion and granting a new trial upon that ground we are not prepared to say that the court abused its discretion." [131 Mo. loc. cit. 546.]

It seems to me that if the trial court acted on the theory just mentioned, it erred in not limiting its action to vacating the verdict, since our code though liberal in its amendment of pleadings has not yet advanced so far as to contemplate the amendment of evidence.

But digressing from the present digression, I turn to the facts and features the record now on hand contains.

The opinion of Burgess, J., on the former appeal, has, among others, this statement of facts:

"Deceased had been a resident of Webster Groves for about eighteen months; had frequently taken passage on the train by which she lost her life; was familiar with the track and surroundings, and knew the time of the arrival of the train, which was about 9 a. m., but on the morning of the accident was a few minutes late. On that morning it was misting rain; Mrs. Kreis had an umbrella over her right shoulder and a basket of eggs in her left hand. She did not see the train before it struck her.

"The south track was used by trains en route to St. Louis, and the north track for those going west. There was a switch or spur leaving the south track of the railroad about four hundred feet east of Murphy's crossing, and it was near the head of this spur or switch that deceased approached near enough to the south track to be struck by the beam or deadwood of the engine attached to a train which was proceeding eastward at a speed of about twenty miles per hour, or in front of it, and was killed. The space between the two tracks was eight feet, five and one-half inches, and she was on this space all the time until the moment of the collision, when she stepped close to the rail, between two ties, or in front of the train. She was never on the railroad track, if at all, until just at the instant that she was struck by the train." [131 Mo. loc. cit. 538, 539.]

Examining the present record I find substantially the same state of facts existed at the last trial, as existed at the first. A large portion of the testimony read in evidence was read from the bill of exceptions taken at the first trial. This is true of the testimony of Willis, Caffrey, Cassilly, Ridington, Folger and others. With the width of the pilot beam or cross-beam clear across given at about eight feet, six inches and the width between the rails given at four feet, eight and one-half inches, and the width between the north

and the south tracks given at six feet, five and one-half inches, it would follow that the projection of the cross-beam over the last mentioned space would be some twenty-two and three-fourths inches, leaving a clear space between the two tracks of over six feet to a person walking in between them, in which to walk in perfect safety.

At this point I deem it not improper to quote from the opinion of Judge J. F. GREEN, who presided at the first trial of this cause, and I do this the more readily, as his opinion coincides in its statement of facts with that of Judge BURGESS.

"When Mrs. Kreis entered upon the railroad she took this path and proceeded eastward toward the depot; there is a switch or spur leaving the south track of the railroad about 400 feet east of Murphy's crossing and it was near the head of this spur or switch that deceased approached near enough to this south track to be struck by the beam or deadwood of the engine attached to a train which was proceeding eastward on the south track at a speed of about 20 miles per hour. Mrs. Kreis was never on the railroad track at all; the space between the two tracks was 8 feet 5 1-2 inches and she was on this space all the time until the moment of the collision when she stepped close to the rail between two ties; there was considerable testimony as to the distance at or near Murphy's crossing between the two tracks could be seen the engine approaching from the west but I do not regard this as important, as all of the testimony shows that the plaintiff's wife was not in the slightest peril until she stepped near the south track 400 feet east of the crossing. Mr. Welles (plaintiff's witness) testified that he was standing near the depot (which is about 1,200 feet east of Murphy's crossing) and saw Mrs. K. coming down the path on the space between the tracks and that he saw the train coming in the same direction and immediately behind her; he hardly realized the fact that she was in any danger until

the moment of contact when following the meanderings of the path she stepped near the end of the ties and was struck by the train.

Frank Chambers' testimony is to the same effect. He says that Mrs. Kreis was coming rapidly along the ends of the ties carrying the umbrella raised over her right shoulder when she was struck; he and all other witnesses agree that she was not in any danger whatever while she remained in the middle of the path between the two tracks. Plaintiff's witnesses say that no signals were given by the employees in charge of the train until at the time or a moment before the train came in contact with Mrs. K. She was hurrying to the station to take the train which struck her, and that she heard it coming and was endeavoring to reach the depot in ample time is shown by the testimony of Chambers, who says she was running. She seems, however, to have been oblivious to her surroundings and inadvertently approached too near the track and in doing so failed to observe the most obvious dictates of prudence and caution and the injury to her resulted therefrom. In such cases the rule of law is that there can be no recovery, although the employees of the railroad company were remiss in their duty as to giving the customary signals or warnings of danger. [Powell v. Railroad, 76 Mo. 80; Boyd v. Railroad, 105 Mo. 371; Taylor v. Railroad, 86 Mo. 457; Turner v. Railroad, 74 Mo. 602; Butts v. Railroad, 98 Mo. 272; 64 Mo. 480; 69 Mo. 416; 68 Mo. 470; 93 Mo. 433.]

As to the rate of speed at which the train was running it may be said that there was no evidence as to any ordinance of the town of Webster Groves prescribing the speed of trains (151) and in the absence of either statutory or municipal regulation no rate of speed is negligence *per se* [Powell v. Railroad, 76 Mo. 82; 74 Mo. 594; Maher v. Railroad, 64 Mo. 267.]

In the case of Yancey v. Railroad (93 Mo. 433) the

facts were, that the deceased who was carrying an umbrella over him, was killed by a box car which was approaching from the north, and as Yancey stepped upon the track he was struck and killed. In passing upon the case the Supreme Court said: "We think it manifest that the negligence of deceased in walking, in broad daylight, with an umbrella hoisted over him, upon the railroad track directly in front of a moving car without looking for the car, when by looking he could have seen its approach, was the immediate and proximate cause of his death and negligence can not be imputed to the brakeman, as he had a right to presume even if he saw deceased approaching the track, that he either heard or saw the car and would not recklessly put himself in front of it,' and the right to recover was denied.

The very recent case of Maxey v. Railroad, 113 Mo. 1, is very similar to this case. There the plaintiff at a place where there were two parallel tracks, while waiting for a train to pass on the main track, stepped on the side track and was immediately struck by a train on the side track. If he had looked he could have seen the train which struck him when it was a quarter of a mile away. It was held that he could not recover, although no signals ever were given by the train which injured him. .......

Here the testimony shows that Mrs. Kreis was never on the track at all and the physical facts of the case show that she was in no danger until the moment before she was struck when a single step by her from a position of safety brought her in contact with the train. It will certainly not be seriously contended that the employees of defendant were required to give any warning to the deceased while she was in a place of safety in the center of the space between the tracks, and there is no evidence whatever that they could have avoided striking her after she voluntarily left such place of safety for one of peril."

An attempt has, however, been made by plaintiff to

establish a different state of facts from that heretofore commented on by showing that the path between the two tracks occasionally veered to one side, and doing so went over the ends of the ties on the north line of the south track, on which the train bound for St. Louis was coming.   Kreis, testifying on his own behalf stated at first, in reference to the path between the tracks:  "Of course it meandered, sometimes ran up near the track and on the ties, just according to how the ballast was laid there.   If it was very heavy ballast they followed a path around; the people would take the most convenient way."  . . . . . . .  "It went right up near to the ties; the ties were imbedded right in the cinders." This testimony was delivered while the attention of the witness was directed to photograph number 2, taken for plaintiff and used at the former trial.   He subsequently stated that a person would be in no danger of a passing train, if he went along there carefully and ordinarily.

And further that the path at that time led in its meanderings "right up to the rail, right up on the ties."

Welles testified that "the path leads directly to the south track on the end of the ties at one place."   He would not state whether Mrs. Kreis was on that path when struck, and stated that she was right close to switch when struck. Chambers, another witness for plaintiff, asked where Mrs. Kreis was when he first saw her stated, "she was walking right along near the end of the ties with an umbrella on the right shoulder" and that "the train was right behind her, coming the same way."

But counsel for plaintiff, while endeavoring to establish that the path occasionally ran upon the ties, surely forgot one of his most important witnesses, a witness that could not be approached, coached nor bribed; a witness who could not be subpoenaed, although his deposition might be taken. That deposition has been taken in photograph number 2, and that witness the unimpeachable sun.   His deposition,

taken in indelible characters of heavenly light, reproduces the surroundings of the scene of the accident, the tracks, the space between them, the pathway and the end of the ties, as they existed at the time of the injury. That deposition establishes that the eye, though aided by an instrument, can discover in that sun-painted picture no place where the path runs upon the end of the ties or touches them, nor is any point discoverable where the ties are imbedded in earth or cinders, or are even with the surrounding surface. They stand out in bold relief and can be seen and counted.

And to me it is a very comforting thought and pleasing reflection, that amid all the vicissitudes and pressing exegencies of railroad damage suits, they have never yet attempted to impeach "Old Sol;" perhaps they were deterred by his *shining* reputation. At any rate, from his serene seat in the heavens

"From his cairn on high,"

he still looks down upon the pigmy populations of earth with the same burning eye wherewithal erstwhile he gazed down upon Annanias, what time he went in before the apostles, and "lied to the Holy Ghost."

Such testimony as this which bears truth's own impress upon it, gives full sanction and corroboration to the statements of Caffrey and other witnesses for defendant, that the path is in the center of the two tracks and that consequently a person walking thereon need not incur peril from a passing train.

In addition to that we have the uncontradicted testimony of Chambers, who was watching Mrs. Kreis up to the instant she was struck and went to the place immediately and assisted in carrying her on a cot to the depot, that she was not struck by the engine itself, but by the cross-beam. This corresponds with the testimony of Harris, the fireman of defendant, that if Mrs. Kreis as she was going towards

the south track, had been "one step later, the bumper (or cross beam) of the engine would not have struck her." Fieldsen, for defendant, also testified that immediately after the collision occurred he went to that point and saw "tracks of a lady's footprints of a shoe between the two tracks;" that they came angling over from the north or west bound track at an angle of about forty-five degrees between the two tracks, and that they stopped when they reached a point about eighteen to twenty inches from the south or east bound track. This testimony of Fieldsen's also corroborates that of Chambers and Harris as to the point where the collision happened.

It is true that effort was made by counsel for plaintiff to contradict this testimony of Fieldsen's by showing that he had testified at a former trial that the footprints in question were "between the ties of the north rail of the south track;" but the witness testified that the word ties was incorrectly reported at the former trial or if it were that he meant tracks; that he did not see "any footprints between the ties at all." In support of his contention that witness had testified in the manner contended, counsel refer to page 53 of the abstract of record on the former appeal. Taking this reference we have examined that page, where we find the following: "I examined ground; could see the footprints between the ties of the north rail of south track; lady was found 36 feet from there; footprints was on north rail of south track, and blood on south rail of north track; footprints right around in center of track, but none right up between the ties." So it will be seen that the witness at the former trial corrected the mistake he made in the beginning of his statement by saying in its conclusion just what, in substance, he testified to at the last trial, to wit, that he "saw footprints right around in the center of track, but none right up between the ties."

It is unnecessary to quote or discuss the testimony

further.    There is no substantial difference between it and
that taken at the first trial at which the photograph 2 was
introduced by plaintiff and shown by Cassilly the photogra-
pher who took it to be correct.

In this case there is nothing in the evidence to show
that the railroad company had any reason to suspect or
anticipate that deceased had any intention of crossing the
track or venturing too near the cars, until they were so close
to her that no exertion on their part could have avoided the
collision between the deceased and the cross-beam.

It must be remembered that Mrs. Kreis was an adult
woman accustomed to go along the pathway in evidence,
knew the train was coming, was running so as not to be
left, and knew that it was behind her; knowing these things
she was guilty of great negligence in failing to look back at
the rapidly advancing train in order to discover its exact
position before attempting without looking and with an
umbrella over her head partly obstructing her view, to
rush toward a point where collision, as it turned out and
where she would have seen it had she looked, was inevitable.
And it must be remembered also, that a railroad company is
not in any sense a guardian *ad viam* for those adult
travelers who travel in a parallel line on a well established
and daily thronged pathway which borders their track.
Their duty to the public, though commensurate with the
dangerous agencies they employ in its service, has not yet
reached so advanced a stage as that above indicated; ordi-
narily care still remains the measure of their duty and the
extent of their obligation to the public.

And it shall not escape observation that the foregoing
remarks are expressly limited to *adults*, for I am not un-
mindful that this court has solemnly decided, and conse-
quently it has passed *in rem judicatam*, that a boy eleven
years and nine months old and weighing sixty-five pounds,
standing at a distance of two or three feet of a passing

freight train, could *be sucked under such train by the air put in motion by its passage*, and the railroad company be liable for such suction. [Graney v. Railroad, 140 Mo. 89.]

For these reasons the instruction in the nature of a demurrer to the evidence should have been given. This being the case, the judgment should be reversed.

ROBINSON, WILLIAMS and MARSHALL, JJ., concur; GANTT, C. J., BURGESS and BRACE, JJ., concur in reversing because of the contributory negligence of Mrs. Kreis.