# KOEGEL v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division Two, May 10, 1904.

1. **NEGLIGENCE: Trespasser.** A pedestrian who walks on a railroad track within the limits of a city, where there is no crossing or street and where the public is warned by conspicuous signs not to trespass thereon, is a trespasser.

2. **——: Duty to Trespasser.** If the tracks on which plaintiff was injured was a place where the public were in the habit of walking to such an extent that the trainmen were advised that they would likely find pedestrians there at the hour plaintiff was struck by defendant's train, the defendant owed him a duty, notwithstanding he was a trespasser, not to wantonly or recklessly injure him, if the servants in charge of the train saw him in time to have averted the injury with safety to passengers on the train, or if by the exercise of ordinary care they could have seen him in time to have avoided injuring him.

3. ————: Seeing Trespasser: Ringing Bell: Contributory Negli-
gence: Looking for Train. Plaintiff, an adult, in daylight, was
struck by a train while walking between the tracks of two sepa-
rate railroads, eight feet apart. He had been walking on the
track of one of these, and to avoid being hurt by a train on that
track, says he stepped off and was about two feet from it walk-
ing along between the tracks with his back to defendant's
train approaching on the other track, and was struck, as he
thinks, by that train about two minutes after he stepped off the
other track. He says that when he stepped off he looked back
to see if there was a train coming on the track on which was
the train which struck him, and saw none; that he was between
the tracks when he was struck; that he did not see or hear the
train which struck him before or after he was struck, and that
the reason he thinks this train struck him is that there was no
other train there at that time. No one saw him on either track
or between the tracks, which were eight feet apart, and which
had been long used by laborers in packing houses in going to
their work at this hour of the day, although there were con-
spicuous signs warning persons not to walk there. Nor is there
anything in the evidence to indicate at what point within the
two minutes he approached close enough to defendant's track
to enable the train to strike him, or to indicate that it would
likely strike him. There was a space of safety of three and
one-half feet between the trains within which he could have
stood without the range of either.

Held, that the plaintiff is not shown by the evidence to have
been at any time in such a dangerous position as required
those in charge of the train to have seen him and to have
stopped the train in time to have avoided injuring him.

Held, also, that the defendant's negligence was not established by
showing that the bell was not ringing nor the whistle
blown, for the failure to do either in no manner con-
tributed to plaintiff's injury, the plaintiff being a trespasser
at the time.

Held, also, that if plaintiff was struck by defendant's train, it
was due to his contributory negligence in approaching too
close to defendant's track without looking for the train.

Appeal from Buchanan Circuit Court.—*Hon. W. K.
James*, Judge.

Reversed and remanded (*with directions*).

*Martin L. Clardy* and *Hall & Woodson* for appel-
lant.

(1) There was no evidence that the Missouri Pacific train struck plaintiff. (2) There was no proof that the bell was not ringing on the Missouri Pacific engine. (3) The rule is that affirmative evidence of the kind given for defendant can not be and is not impaired or affected in any degree by such negative evidence as that introduced by plaintiff. Henzs v. Railroad, 71 Mo. 638; Shaw v. Railroad, 104 Mo. 657; Sanders v. Railroad, 147 Mo. 424; May v. Crawford, 150 Mo. 527; Seibert v. Railroad, 49 Barb. 586; Culhane v. Railroad, 60 N. Y. 137; Schufeldt v. Railroad, 96 Mich. 327, 55 N. W. 1014; Bond v. Railroad, 117 Mich. 652, 76 N. W. 102; Britton v. Railroad, 81 N. W. 253; Horn v. Railroad, 55 Am. & Eng. R. R. Cas. 158; Still v. Huidekopers, 17 Wall. 393; Railroad v. Elliott, 28 Ohio St. 346; Butcher v. Railroad, 55 Am. & Eng. R. R. Cas. 185; 3 Lawson on Rights & Rem., sec. 1184; Newland v. Railroad, 55 Am. & Eng. R. R. Cas. 263; Bohan v. Railroad, 61 Wis. 391, 21 N. W. 241. (4) Plaintiff was not entitled under the pleadings to assert any right founded upon either the ordinance regulating the speed of railway trains or the one requiring the bell to be rung. State ex rel. v. Sherman, 42 Mo. 214; Ahitz v. Railroad, 17 Mo. App. 419; Mooney v. Kennett, 10 Mo. 555; 15 Ency. of Pl. & Pr., 426. (5) There was no evidence that the excessive speed of the train had anything to do with producing the accident. As said by this court in Jackson v. Railroad, 157 Mo. 645, it was necessary for plaintiff to show that his injuries were caused by the excessive rate of speed. Kelley v. Railroad, 75 Mo. 142; Bluedorn v. Railroad, 121 Mo. 269. (6) The ordinance regulating the speed of railway trains at six miles an hour was unreasonable and oppressive, and therefore void. The ordinance fixed the rate of all railway trains at all places in the city, even in the very yards of the railroad companies, at the uniform rate of six miles an hour. Jackson v. Railroad, 157 Mo. 633; Merz v. Railroad, 98 Mo. 330; Blue-

dorn v. Railroad, 108 Mo. 439; Prewitt v. Railroad,
134 Mo. 633. (7) Plaintiff was a trespasser in
the Burlington railroad yards and defendant owed
to him only the duty not to wantonly injure
him. Hyde v. Railroad, 110 Mo. 272; Ostertag v. Rail-
road, 64 Mo. 421; Schug v. Railroad, 102 Wis. 515, 78
N. W. 1090; Tanner v. Railroad, 161 Mo. 497; Feebach
v. Railroad, 167 Mo. 206; Hyde v. Railroad, 110 Mo.
272; Heiter v. Railroad, 53 Mo. App. 331; Riley v.
Railroad, 68 Mo. App. 652. (8) Plaintiff was guilty
of contributory negligence, which precluded his re-
covery. He never looked around, and never took any
precautions whatever against such a train, but walked
on from three to five minutes, and until he was hurt.
Guenther v. Railroad, 95 Mo. 297; Maxey v. Railroad,
113 Mo. 1; Kreis v. Railroad, 131 Mo. 544; Yancey v.
Railroad, 93 Mo. 433; Kreis v. Railroad, 148 Mo. 321;
Tanner v. Railroad, 161 Mo. 497; Harlan v. Railroad,
64 Mo. 483; Moody v. Railroad, 68 Mo. 473; Turner v.
Railroad, 74 Mo. 607; Powell v. Railroad, 76 Mo. 82;
Taylor v. Railroad, 86 Mo. 462; Butts v. Railroad, 98
Mo. 272; Boyd v. Railroad, 105 Mo. 371. (9) De-
fendant was not guilty of recklessly or wantonly injur-
ing plaintiff. Kreis v. Railroad, 148 Mo. 329; Tanner
v. Railroad, 161 Mo. 497.

*Grant Watkins* and *Johnson, Rusk & Stringfellow*
for respondent.

(1) Appellant must show that he was prejudiced
by the action of the court in granting a new trial, for
the matter rests peculiarly within its discretion.
Taliafaro v. Evans, 160 Mo. 380. Must show as a mat-
ter of law, that the trial court erred in granting a new
trial for the reason given by the court in so doing.
Chouquette v. Railroad, 152 Mo. 257; Lee v. Pub.
Co., 137 Mo. 385; Folding Bed Co. v. Railroad,
148 Mo. 478; Van Lien v. Barret & Barret Bever-
age Co., 144 Mo. 509. (2) The record shows that

many people passed up and down the tracks every day. This negatived the presumption of a clear track and required a lookout by those managing the train. Morgan v. Railroad, 159 Mo. 283. Even though the plaintiff was negligent, the plaintiff had a right to go to the jury on the hypothesis that the servants of defendant were negligent in failing to use the means at hand to avert the calamity after, by the exercise of ordinary care, they could have discovered the peril. Fielder v. Railroad, 107 Mo. 645; LeMay v. Railroad, 105 Mo. 361; Frick v. Railroad, 75 Mo. 602; Guenther v. Railroad, 108 Mo. 18; Chamberlain v. Railroad, 133 Mo. 603; Kelly v. Railroad, 95 Mo. 279; Lynch v. Railroad, 111 Mo. 608. (3) There was no evidence of negligence on the part of plaintiff, certainly no conclusive evidence of negligence, such as the court could declare as a matter of law. A party can not be convicted of negligence for not anticipating the negligence of another. Plaintiff had a right to rely on defendant's obeying the ordinance. Petty v. Railroad, 96 Mo. 290; Crumpley v. Railroad, 111 Mo. 152; Jennings v. Railroad, 112 Mo. 268; Sullivan v. Railroad, 117 Mo. 214; Gratiot v. Railroad, 116 Mo. 450; Brannock v. Elmore, 114 Mo. 55. (4) Running a railway train within the city at a rate of speed in excess of that prescribed by ordinance is negligence *per se.* Gratiot v. Railroad, 116 Mo. 463; Hutchinson v. Railroad, 161 Mo. 253; Prewitt v. Railroad, 134 Mo. 615; Hanlon v. Railroad, 104 Mo. 381; Bluedorn v. Railroad, 108 Mo. 439; Murray v. Railroad, 101 Mo. 23; Kellny v. Railroad, 101 Mo. 68; Edwards v. Railroad, 67 S. W. 950. (5) The plaintiff had a right to assume when he stepped aside and looked back and saw that there was no train in sight, that he was in perfect safety and that defendant would obey the ordinance, he thereby having ample time to walk to the crossing. The case should have been submitted to the jury on this

hypothesis. Hutchison v. Railroad, 161 Mo. 254; Gratiot v. Railroad, 116 Mo. 461; Sullivan v. Railroad, 117 Mo. 222; Estwin v. Railroad, 96 Mo. 295; Kellny v. Railroad, 101 Mo. 77; Jennings v. Railroad, 112 Mo. 276. (6) Where the facts are such that reasonable minds might differ, it is a question for the jury, and should be submitted to them. Huhn v. Railroad, 92 Mo. 450; Gratiot v. Railroad, 116 Mo. 451. (7) Defendant was bound by the ordinances, as they were properly pleaded, and upon the objections of the defendant, an amendment was made to the petition and the case was tried on the theory of the amended petition. The same is true of the amendments made by the defendant in the case and inserted in the answer in the record.

GANTT, P. J.—This is an appeal from an order of the circuit court of Buchanan county granting the plaintiff a new trial.

The action is one for damages for personal injuries alleged to have been caused to plaintiff by the negligence of defendant.

The cause was tried at the February term, 1901. A jury was impaneled, and at the close of all the evidence the circuit court gave a peremptory instruction directing the jury to find for the defendant. Whereupon plaintiff took a nonsuit with leave to move to set the same aside, and thereafter filed his motion for a new trial, which the court sustained on the ground that it erred in giving said instruction, and from its order in granting a new trial defendant appealed to this court.

The propriety of sustaining the demurrer to the evidence is the sole question for solution at this time. The petition in substance is as follows:

"Comes now the plaintiff and for cause of action states that the defendant is a corporation, organized and existing under and by virtue of the laws of the State of Missouri, and as such corporation owns and operates railway tracks running to and from the city

of St. Joseph, and that among other tracks, the defendant has a track which runs from St. Joseph to South St. Joseph and to Atchison and Kansas City. That said defendant operates said railroad and has daily passenger trains which run over said roadbed on schedule time. That said railroad track from the St. Joseph union station to South St. Joseph is within the city limits of the city of St. Joseph, Buchanan county, Missouri, and is subject to all of the city ordinances which are in force and which are passed by the city council of the city of St. Joseph, Buchanan county, Missouri. That, to-wit, on the twenty-second day of November, 1900, plaintiff was walking from South St. Joseph to St. Joseph along the track owned and operated by said defendant railway, and very near the edge of said track. That the place where plaintiff was walking was a place which pedestrians were accustomed to use in going to and from St. Joseph to South St. Joseph to their work, and by common consent, was used as a walk for workmen to go to and from their work from the main portion of the city of St. Joseph to the stock yards at South St. Joseph, Missouri. That on the above mentioned date, the plaintiff, while walking along the track of the Missouri Pacific Railway Company, and close to the edge thereof, and at a point where—street intersects the railway, and also where the southern end of the switch yards of the Burlington Railway Company intersects—that while walking north along said track in a place of danger as herein stated, and so close to said track that a train passing over said track would strike plaintiff, said defendant, its agents and servants, while running its said passenger train, which was drawn by engine numbered 210, at about ten o'clock in the morning, and while running their said train from South St. Joseph to St. Joseph and over the track herein described, struck plaintiff and knocked plaintiff down and broke plaintiff's arm

and rendered plaintiff insensible. That prior thereto and at the time that defendant struck plaintiff, defendant, its agents and servants, was running its train at a rate of speed, to-wit, forty miles an hour. That defendant did not give plaintiff any alarm, ring any bell or blow any whistle, as provided by the ordinances of the city of St. Joseph, and was running the train in violation thereof. That said injury has made said arm useless and rendered plaintiff a cripple for life. That said injury was caused wholly on account of the negligence, willfulness and carelessness of defendant, its agents and servants in running its said train in violation of the ordinances of the city of St. Joseph. Plaintiff further states that defendant, its agents and servants, were negligent, that they saw plaintiff for the distance of a half mile in the place of danger, but gave plaintiff no alarm whatever, but ran plaintiff down, struck plaintiff and injured him as aforesaid by their carelessness, negligence and in violation of law. Wherefore plaintiff is rendered a cripple as aforesaid and is damaged in the sum of five thousand dollars. Wherefore plaintiff prays judgment in the sum of five thousand dollars, and for such other and further relief as the court may deem proper."

The answer was first a general denial and second contributory negligence on the part of plaintiff in being at the time he was injured a trespasser on the tracks and right-of-way of the Kansas City, St. Joseph & Council Bluffs Railroad Company and the Hannibal & St. Joseph Railroad Company, both of which were at the time owned and operated by the Chicago, Burlington & Quincy Railroad Company under some arrangement the particulars of which were unknown to defendant; that plaintiff was guilty of negligence contributing directly to produce and cause the accident alleged in the petition, by absolutely taking no care or precaution whatever to see or hear defendant's train men-

Koegel v. Railroad.

tioned in the petition and whatever injuries he may have received were caused by his own fault.

There was no reply filed, but the cause was tried as if one had been filed.

The petition alleges that the accident occurred near the intersection of a street by defendant's tracks, but it does not specify the name of the street, but from the evidence we glean it happened between what is locally known as Missouri avenue, which was south of the Burlington yards, and Lake avenue or boulevard north of those yards, and at a point well up in the yards. No other street crossed the tracks between the above named avenues.

On the twenty-second day of November, 1900, and prior thereto, there were large packing houses situated in the southern part of the city of St. Joseph. It is over a mile from the packing house district to Lake boulevard. The city of St. Joseph proper is north of this boulevard. The Hannibal & St. Joseph Railroad Company, and the Kansas City, St. Joseph & Council Bluffs Railroad, each owned tracks running nearly north and south from the packing houses to Lake boulevard. The Kansas City, St. Joseph & Council Bluffs owned its main tracks and also terminal facilities, consisting of railroad yards in which trains were made up and requiring numerous switch tracks, and the Hannibal & St. Joseph owned its main tracks parallel to the main tracks of the Kansas City, St. Joseph & Council Bluffs.

The Missouri Pacific Railway had acquired the right by contract to run its trains over the Hannibal tracks through these yards. These yards extended a half mile south from Lake boulevard and to within a few feet of Missouri avenue.

The Kansas City, St. Joseph & Council Bluffs main track is on the east, then next parallel to it on the west is the Hannibal main track.

These tracks are eight feet apart—then on the west

are nine or more switch tracks. There were still other tracks east of the Kansas City road which belong to other railroads.

The Hannibal and Kansas City tracks cross each other about one hundred feet south of Lake boulevard, which crossing is referred to in the evidence as the "railroad crossing."

The southern limits of the yards were marked by a yard-limit board stating that fact. Immediately north of Lake boulevard there was a printed sign reading:

"No admittance except to employees. These grounds are private property and used as a switching yard. All persons are warned of danger. G. M. HOHL, Superintendent."

There was also at Lake boulevard a sign known as a thoroughfare sign reading:

"This is not a thoroughfare. But the private property of the K. C. St. J. & C. B. R. R. Company. All persons are warned against trespassing."

There was also another such thoroughfare sign at Missouri avenue, the southern limit of the yards, and five such signs between Missouri avenue and Lake boulevard. These signs the evidence tended to prove had been there for a number of years. They were painted in large black letters on boards two and one-half feet square painted white, and were on posts six and one-half and seven feet high.

There was a "2000-foot post" two thousand feet south of the railroad crossing. The evidence tended to prove that the employees of the stock yards and other people were in the habit of walking on these main tracks, and there was a footpath between the two tracks on which pedestrians walked, which approached nearer the ends of the cross-ties of the Hannibal track than it did to the Kansas City track. On the morning of November 22, 1900, the plaintiff as walking from the direction of the stock yards northward toward the city

of St. Joseph between the tracks of the Hannibal and St. Joseph railroad and the Kansas City, St. Joseph & Council Bluffs railroad. As he walked north in the yards of the latter road a freight train passed him going south and according to his testimony he was walking near the Kansas City, St. Joseph and Council Bluffs track (hereinafter called the Kansas City track), and he stepped aside to keep out of its way. He testified that at that time he looked back south to see if any train was coming from that direction, but saw none, but in about two minutes a Missouri Pacific train came north on the Hannibal track and struck him. He heard neither whistle nor bell. It struck his left arm only and broke it. He was knocked down and rendered unconscious, lying on the ground he knew not how long. He heard no whistle on the Kansas City freight train. That train was making a good deal of noise. He says about one-half of the freight train had passed him going south when the Missouri Pacific train came up. After he came to himself, he put his hat on and went over to the switch engine. When he recovered consciousness *he was lying between the two tracks.* He was *between them when he was struck.* He says his arm hung by his side when it was struck. *He did not hear or see the Missouri Pacific train* until he was struck, nor afterwards. He is only certain he was struck by a Missouri Pacific train because no other train came on that side. He says he was walking about two feet from the Kansas City freight train. The skin of his arm was not broken by the train striking it.

No other witness saw the train strike him. When he regained his consciousness both trains were gone.

The other evidence as to the manner of the accident on the part of the plaintiff tended to prove that a Burlington train going south that morning consisted of thirty-five or forty cars, and, being a pretty heavy train, broke into two parts before it got out of these yards, and a switch engine crew had coupled it up and backed it

out of the yards. Plaintiff examined the yard fore-
man, the conductor, engineer and brakeman of the
freight train. The only one of these who saw plaintiff
or any other man in those yards that morning previous
to plaintiff's accident was the engineer of the freight.
He could not identify plaintiff as the man he saw, but
he did see some man on the right-of-way walking
towards him. Paid no attention to who he was, but
noticed him until he passed his engine; met a Mis-
souri Pacific train in the yards, and after it passed saw
plaintiff trying to get up. When he first saw him after
he was down he seemed to be lying on one shoulder
and he raised up and picked up his hat. He did not
see the Missouri Pacific strike plaintiff, nor did he
observe it at the time it passed plaintiff. When he
first observed plaintiff he was near the end of the ties
of the Hannibal track on which the Missouri Pacific
train was running. He was not certain whether the
Missouri Pacific bell was ringing when it passed him,
but he thinks it did not whistle, but the witness whistled
his own engine. An engineer on an engine going
north from that point could see a man on a clear day as
far up as Lake boulevard. Different witnesses testi-
fied that many pedestrians used these tracks and the
right-of-way walking to and from the city to the stock
yards. The brakeman on the freight train heard the
bell ringing on the Missouri Pacific train when it
passed. He was on top the freight.

The evidence shows these tracks were eight feet
apart. The freight cars project eighteen inches over
the rails, and passenger cars two feet, leaving a space
of three and one-half feet in which plaintiff could have
stood in safety while both trains were passing. Rixey,
the brakeman on the freight, testified that when he first
saw plaintiff, the freight had not entirely passed him,
the witness being about twelve cars from the rear end
of the train, and the plaintiff was just in the act of
getting up, and at that time the Missouri Pacific was up

at the boulevard crossing. The engineer of the switch engine says the freight was running about eight to ten miles an hour at that time. Huff, the engineer, testified that the natural and ordinary escape of steam from his engine would have been enough to blind a person walking along, and if the smoke from his engine on that morning trailed and dropped down, it would have obstructed the view of the engineer on the Missouri Pacific engine ahead of him.

Plaintiff's physicians testified that his injury consisted of a fracture of the lower third of the upper left arm and that *the skin was not broken* nor the flesh lacerated. Dr. Campbell, one of plaintiff's witnesses, testified that if a railroad train running at the rate of thirty-five or forty miles an hour had struck plaintiff's left arm and broken it and thrown him to the ground, *the skin of the arm would have been broken,* and he would have been otherwise injured, and that when he examined him his arm had the appearance it would have had if he had stepped quickly and fallen on it and broken it. He was corroborated in this opinion by Dr. Gieger, the only other expert who testified upon that subject.

On the part of defendant, the engineer of the Missouri Pacific train testified he did not see plaintiff or any other man on his track. Didn't know until next day a man was hurt. Remembered then passing the freight that morning as he came up to the crossing where he stopped. His bell was ringing. The fireman also testified that he did not see plaintiff when he was hurt or before; that his bell was ringing while going through the yards. Does it every day at that place. He sounded his whistle as he approached the railroad crossing of the Kansas City track.

Gooding, the engineer at the switch engine, which pushed the freight train of the Kansas City south that morning, testified that when he got the signal from the engineer of the freight he shut off steam, and the

caboose of the freight passed on.    Just then the Missouri Pacific went by and as the smoke cleared away he saw a man coming toward him holding his arm.    Until then he could see nothing between the tracks on account of the smoke.    The Missouri Pacific engine had also shut off steam and the smoke from that engine and from his went to the ·ground.    The Missouri Pacific train was going about 20 or 25 miles an hour and was slowing up for the railroad crossing.

Two ordinances of the city were introduced, one forbidding engines to be driven within the city at a greater speed than five miles an hour, and the other requiring the bell to be rung continually in the city. There was evidence that the point where plaintiff was injured was in the extended limits of the city of St. Joseph.

Did the circuit court properly direct a verdict for the defendant upon the foregoing evidence?    If it did, it erred in granting a new trial on the ground that it should not have given the instruction.

When plaintiff was injured he was a trespasser in the yards of the Kansas City, St. Joseph & Council Bluffs railroad.    The track on which defendant was running its train under a contract with the Hannibal & St. Joseph railroad was under the control of the Burlington railroad which at that time was in the control, both of the Hannibal & St. Joseph, and the Kansas City, St. Joseph & Council Bluffs road.    The place where plaintiff was injured was in the private yards of the defendant's lessor, and the public were warned not to trespass therein.    But notwithstanding plaintiff was a trespasser, defendant owed him the duty of not wantonly and recklessly injuring him if the servants of defendant saw him in time to have averted the injury with safety to the passengers on its train, or by the exercise of ordinary care could have seen him in time to have avoided injuring him, as the place was one where the public were in the habit of walking on the tracks to such

an extent that the trainmen were advised that they would likely find them on the tracks at that hour.

The difficulty in the peculiar state of facts disclosed by the evidence is in applying the foregoing statement of the law to plaintiff's case.

According to his own evidence he was an adult. He was not on the track of defendant at any time. He had been up to a very short time before he was struck by defendant's train (if he was in fact struck by it) on or near the Kansas City, St. Joseph & Council Bluffs track. He had stepped off of or from a close proximity to the Kansas City track and was about two feet from it walking along between the tracks with his back to defendant's approaching train.

Accepting his own statement as true, and no witness contradicts him in this regard, what was there in his position to apprise defendant's engineer that he was in danger of being struck by defendant's engine or train had he seen him?

The Kansas City track was eight feet from the Hannibal track and if plaintiff was, as he says he was, only two feet from the Kansas City track, then he was six feet from the track on which defendant's train was moving.

Being an adult, and the time daylight, what was there to cause the engineer to apprehend that he would recklessly place himself in front of defendant's train or so near to it that he would be struck without looking for its approach? That he did not go upon the track proper, that is, *on or between the rails,* the proof very clearly establishes. Neither he nor any of his witnesses place him in that position, and he says he was between the tracks. Moreover, the very nature of his injury and the place he was seen in immediately after the train passed forbid the deduction that he could have been *on the track.* Had he been he would unquestionably have been killed or crushed and mangled. We think that there was no evidence from which a jury

would have been justified in finding he was *on the track* so as to have made it the duty of the engineer to have seen him, or to have apprehended that he would go upon his track or so close thereto that he would be struck. The able counsel for plaintiff says he moved away from danger of the moving freight train into danger from the train coming up from behind on the Hannibal track. But the only ground upon which plaintiff, a trespasser, can hold defendant responsible for his injuries is that its servants either should have seen him on the track of defendant or so dangerously near thereto in time to have avoided injuring him and the important inquiry then must be, when did he move into the place of danger from this train coming from the south? He says "he was on his way north and the freight train came down the Kansas City track and he stepped aside and then looked south to see if there was a train coming up and he did not see any, and in about two minutes the train came up on the Pacific tracks and struck him." "That the freight train had not entirely passed him." He further says that during these two minutes he "was walking about two feet west of the freight train." Now at what moment in these two minutes did he approach near enough to the Missouri Pacific train to enable it to strike him? Was it before the engine reached him? Did the engine strike him or some other portion of the train? If he did not get over by the Pacific track before the engine reached him or so soon before it got to him that the engineer could not anticipate his doing so, then obviously the engineer was not at fault in not seeing him and no ordinary care would have discovered him there.

But independently of plaintiff's own testimony the other facts in evidence tend to show that he was not on or so dangerously near to the Hannibal track that the engineer and fireman of defendant's train could have seen him for any appreciable length of time. Plaintiff's evidence tends to show that the engineer could have

seen a man on the track at that point a half mile to the north of his train; that his train was running thirty-five to forty miles an hour before it began to slow up for the Kansas City crossing and was running twenty to twenty-five miles an hour when it passed the switch engine; that it passed the Kansas City freight in these yards at the point where plaintiff was hurt; that plaintiff was walking north *two feet west of the Kansas City train* as it passed south. Now, giving full credence to plaintiff's witnesses, it could not have taken defendant's train more than two minutes to have reached plaintiff after it came in sight of him; he was not on defendant's track nor within five feet of it when he might have been seen by the engineer. He says he was in two feet of the Kansas City train when he was struck. It was a physical impossibility under those conditions for defendant's train to strike him. He does not say that at any time he moved nearer to defendant's track, nor does any other witness advise us when, if at all, he left his place of safety near the Kansas City track and went into a place of danger on or near the Hannibal track, but assuming that he did, because otherwise he could not have been struck by defendant's train, how can it be said there was any credible evidence that he approached the Hannibal track long enough before defendant's train reached him to have made it negligence on the part of the engineer or fireman not to have seen him in time to have avoided striking him? Searching the evidence in this record we have been unable to find any evidence that plaintiff was at any time on the track of the Hannibal road or that he was so close thereto that the engineer, if he had been in the exercise of ordinary care, could have seen him in peril in time to have checked his train and avoided injuring him, and the burden was on plaintiff to show this.

There is no evidence showing that the engineer had any reason to suspect or anticipate that plaintiff, an adult, in broad daylight, and with a full knowledge of

the tracks, had any intention of leaving the place of safety in which he was walking and going upon the track upon which defendant's train was moving or of venturing so near to the track that this train would strike him.

On the contrary had the engineer seen plaintiff a minute before his train reached him, he would have seen that he was an adult and walking in a place of safety and it would be most unreasonable for him to anticipate that a grown-up man would step on the tracks of a railroad without even glancing up and down to see if a train was approaching, and the facts show that plaintiff did not get on the track at all nor near enough to be hurt before the engine passed him.

We are cited to Chamberlain v. Railroad, 133 Mo. 587, but the facts of that case are so radically different from those we are now considering they afford no support for plaintiff's recovery in this case. In that case the plaintiff and two others were walking immediately on the track and were observed by the engineer or could readily have been seen for 2,000 feet before the engine struck. Chamberlain was walking on a track in constant use by pedestrians at that time of day in a thickly settled section; there were no signs warning trespassers to keep off the tracks; another train was passing in an opposite direction and whistling and the engineer gave a signal some distance away and he noted that Chamberlain did not heed it but seemed attracted by the other train. None of those conditions existed in this case. The same was true in Fiedler v. Railroad, 107 Mo. 645. This case falls within the reasoning of Kreis v. Railroad, 148 Mo. 321, and Hyde v. Railroad, 110 Mo. 272.

The place where this accident occurred was in the switch yards of the railroad of the Burlington road. Notices were posted at each end of the yard warning the public and trespassers to keep out and that those tracks were not thoroughfares, and in such circumstances there can be no claim of a license from the company that the public might use them for a highway.

From what has been said it is clear that the plaintiff did not establish negligence on the part of defendant, even if the bell was not ringing nor the whistle blown, because the failure to do either in no manner contributed to plaintiff's injury.   If plaintiff was struck by defendant's train, which is largely a matter of conjecture, it was the result of his own reckless and negligent conduct in approaching too close to defendant's train without looking for it, and this alone debars his recovery on the ground of contributory negligence.

The slightest care on his part for his safety dictated that he should look for trains in the yards before going up the tracks or so near thereto that he was in danger of being struck, and his own evidence shows he did not do so.

The trial court properly directed a verdict for defendant and erred in setting it aside and its judgment is therefore reversed and the cause is remanded with directions to set aside the order granting a new trial and to enter judgment for defendant.   All concur.