## GIBSON v. HARRISON.

Opinion delivered June 15, 1901.

1. DOG TAX—VALIDITY.—A municipal ordinance imposing an annual tax of $1.50 on dogs, subjecting their owners to a fine for non-payment thereof, and providing for the killing of dogs upon which the tax is unpaid, is a valid police regulation, under Sand. & H. Dig., § 5138, empowering municipal corporations "to prevent the running at large of dogs, and injuries and annoyances therefrom, and to authorize the destruction of the same, when at large, contrary to any prohibition to that effect." (Page 389.)

2. AGREED STATEMENT—OPINION AS TO LAW.—An admission in an agreed statement of facts, in a prosecution for failure to pay a dog tax, that the ordinance imposing the tax "intended to tax for revenue and not to regulate the running at large of dogs" is an expression of opinion, and is not binding on the court. (Page 392.)

Appeal from Boone Circuit Court.

E. G. MITCHELL, Judge.

*J. W. Story* and *B. B. Hudgins,* for appellant.

The ordinance is invalid because it fails to distinctly state the object of the tax. Const. Ark. art. 16, § 11; 30 Ark. 435. The ordinance does not provide for the levy or collection of the tax

S C—25

pursuant to law. Const. Ark. art. 16, § 11; Sand. & H. Dig., §§ 5184, 5181, 6422. Appellee had only such taxing power as is expressly given it by the legislature. 30 Ark. 435; 54 Ark. 509; 33 Ark. 497; Cooley, Taxation, 678. The act of March 9, 1875, § 69 (Sand. & H. Dig., § 5181), contemplates the *levy and collection* of the dog tax in the same manner as other taxes provided for in Sand. & H. Dig., §§ 5181, 6422. Dogs are property and the subjects of *ad valorem* taxation. Hence the ordinance violates art. 16, § 5, of the constitution. *Cf.* 63 Ark. 643; 86 N. Y. 365; 78 Tex. 300; 25 S. W. 779; 45 S. W. 790; 1 McArthur, 53; 61 Ga. 573. The tax is levied for revenue, and not for regulation, and is hence invalid. 63 Ark. 643; 86 N. Y. 365; 25 S. W. 729; 45 S. W. 790; 1 McArthur, 53; 61 Ga. 573. As a police regulation purely, the ordinance would be invalid, because the amount of the tax is excessive. 34 Ark. 603; 43 Ark. 82; 52 Ark. 301.

*Crump & Bailey,* for appellee.

The requirement of the constitution as to uniformity of taxation applies only to state taxes. 13 Ark. 752; 44 Ark. 137; 46 Ark. 478, 480. The ordinance is valid as an exercise of police power. 14 S. W. 181; 166 U. S. 698; 103 Ill. 30; 79 Ind. 9, 41 Am. Rep. 599; 27 Ind. 62; *id.* 120; 7 Bush, 487; 46 Mich. 183, 41 Am. Rep. 159; 48 Mich. 306; 82 N. Car. 175; 31 Oh. St. 340, 48 Am. Rep. 459; 3 Tex. App. 489, 30 Am. Rep. 152; 75 Ga. 444; 58 Am. Rep. 476; Cooley, Taxation, 601, 602; 40 L. R. A. 520, 523. The amount of the tax is not unreasonable. 166 U. S. 698; 7 Bush, 487. *Cf.* 52 Ark. 301; 56 Ark. 374.

*J. W. Story* and *B. B. Hudgins,* for appellant, in reply.

Appellee is bound by the statement in the agreed statement of facts that the ordinance was a revenue measure. 34 Ark. 603; 43 Ark. 82; 52 Ark. 301.

BATTLE, J. On the 1st day of August, 1900, Knox Gibson was arrested, under a warrant issued by the mayor of the incorporated town of Harrison, for failing to pay a tax on a dog owned by him for the year 1900, after lawful demand for the tax. He was carried before the mayor, tried, convicted, fined $5, and ordered to jail, or to be worked on the streets of Harrison until discharged in due course of law, in default of the payment of the fine and costs. He appealed to the Boone circuit court, where he was tried by the court sitting as a jury, convicted, and fined in the sum of

$5. He has appealed to this court. His offense consisted in a violation of the ordinances of the incorporated town of Harrison in respect to dogs.

On the 10th day of May, 1899, an ordinance of the town was published, which is as follows: "An ordinance to tax dogs in the incorporated town of Harrison, Arkansas.

"There shall be collected on every dog owned and kept in the town of Harrison, over the age of six months, a tax of $1.50 per annum; the year therefor ending December 31. Every person owning or keeping such dog shall apply to the recorder of said town, and on payment of the sum of $1.50 shall receive a receipt for said sum, and shall be furnished with a collar and a tag showing that said sum has been paid. Every person keeping a dog or dogs subject to this tax in said town of Harrison, without paying such tax, shall be subject to a fine of not less than $5; provided, that no person shall incur this penalty until five days after they have been notified by the town marshal of their liability to pay said tax, and a failure thereafter to pay the same."

This ordinance was amended by ordinance published June 14, 1899, as follows:

"That where dogs are found about premises in said incorporation on which no tax has been paid as required by said ordinance, it shall be the duty of the marshal of said incorporated town of Harrison to verbally notify the person in charge of the premises to come forward within three days and pay said tax, and unless said person in charge of said premises shall disclaim any ownership in said dog by himself or any member of his family when so notified, or shall fail for three days after said notification to pay tax on said dog, he shall be guilty of a violation of this ordinance, and punishable as provided by said original ordinance.

"Be it further ordained, that, if the owner of said premises or person in charge thereof shall disclaim any interest in said dog or claim thereto by himself or any member of his family when notified by said marshal, then it shall be the duty of the marshal to employ some competent person who will take charge of said dog and keep him in some convenient place in the town of Harrison for the period of twenty-four hours, and if during that time no person will pay the tax on said dog, then it shall be the duty of the person so employed to kill said dog, and remove his carcass beyond the limits of said town.

"Be it further ordained, that it shall be the duty of the said marshal to contract with said person on the best and most reasonable terms that he can with reference to said impounding and killing said dogs at not exceeding 50 cents per head."

The ordinance was further amended in June, 1900, as follows: "Be it ordained by the town council of the incorporated town of Harrison, that,

"Section 1. It shall be the duty of the recorder of said town to procure the proper number of tags and collars for the dogs subject to taxation in said town, and that he shall furnish the same to all who apply on or before the 1st day of July, 1900, for such tag and collars at and for the sum of one dollar for each dog subject to tax in said town. After the said 1st day of July all persons shall be liable to pay the full amount of tax required by the original ordinance, to-wit: $1.50 for each dog subject to tax; provided, that where a dog is brought into town or becomes of the age for which tax is required after the said 1st day of July, 1900, he shall have fifteen days after said dog becomes subject to taxation in which to pay the said $1.00, and, failing to pay in said time, he shall be required to pay said sum of $1.50.

"Sec. 2. That the marshal shall, by and with the consent of the mayor, appoint some suitable person to collect the tax from those who fail to procure from the recorder the tag and collar aforesaid, or to take charge of and kill or otherwise dispose of said dog, for which he shall be allowed the sum of 50 cents for each tax so collected or each dog so killed or disposed of according to said ordinance."

The only evidence adduced in the trial of this cause in the circuit court was the foregoing ordinances and an agreed statement of facts as follows:

"Town of Harrison,

v.

"Knox Gibson.

"It is hereby agreed between the attorneys for the plaintiff and the attorneys for the defendant that at and before the issuance of the warrant of arrest in this case by the mayor of the incorporated town, the said Knox Gibson owned and kept in the limits of the town of Harrison a dog over six months of age; that he had failed to pay the tax provided for in the ordinance of said town; that he failed to pay the same on or before the first day of July, 1900; that he had been verbally notified for more than three days to come

forward and pay the tax on said dog, which he had failed and refused to do.

"It is further agreed that the ordinance is intended to tax for revenue, and not to regulate the running at large of dogs; that the expense of procuring the collar and the tag thereon would not exceed the sum of 20 cents."

There is a discrepancy between the ordinances and the agreed statement of facts. In the agreed statement of facts it is stated that the ordinances were intended to tax for revenue, and not to regulate the running at large of dogs, and the ordinances show that they were intended to regulate, and that the $1.50 or $1.00 was imposed as a fee for the privilege of keeping a dog. This fee was not to be collected as a tax. If the owner failed to pay it after demand, he was subject to a fine of not less than $5. Upon payment of the fee, he was furnished with a receipt for the same, and a collar and tag, which was manifestly intended to be worn by the dog. It is made the duty of the marshal of the town, upon finding a dog upon any premises within the corporate limits for the keeping of which no fee has been paid, to notify the person in charge of the premises to pay the tax; and such person, unless he, for himself and every member of his family, disclaims ownership of the dog, or pays the fee for keeping him, is punishable as provided by the ordinances. All dogs for which the fees are not paid, upon certain proceedings had, are required by the ordinances to be killed. All these requirements and regulations show the object of the ordinance to relieve the town of the worthless dogs, and to limit the right to keep dogs to those which the owners find sufficiently useful to justify them in paying the fee.

These ordinances, so far as it is necessary for us to consider them, are valid as police regulations. Section 5138 of Sandels & Hill's Digest authorizes the councils of all municipal corporations in this state "to prevent the running at large of dogs, and injuries and annoyances therefrom, and to authorize the destruction of the same, when at large contrary to any prohibition to that effect." Under the power to prevent injuries and annoyances therefrom (the dogs) the town council of the incorporated town of Harrison had the authority to enact the ordinances in question.

Ordinances and statutes of the general character of those in question have been enacted in other states, and have been generally, if not universally, upheld by the courts. In the state of Kentucky the charter of the city of Frankfort delegated to its

council authority to make by-laws for the comfort and security of its citizens. "A penal ordinance for security against pestilent dogs not seeming, on trial, sufficient for the end, the council adopted the following supplemental provision: 'That all persons owning or controlling dogs within the city of Frankfort are hereby required annually, on the 10th day of April, to apply to the city clerk to register, and procure a brass collar, duly stamped, for each dog, and pay to the clerk at the time of registry a tax of $2 for every dog so owned and registered; which tax the clerk shall pay into the city treasury. Any person failing to comply with the provision of this ordinance shall, on conviction before the police judge, be fined the sum of $5 for each day of failure and for each dog owned or controlled by him not registered as aforesaid. The marshal or any police officer shall forthwith kill any dog found upon the streets without such collar so procured from the city clerk.''

In *Commonwealth* v. *Markham,* 7 Bush, 486, the court of appeals, in speaking of the "tax of $2 for every dog," said: "But though called a tax, yet it is in our opinion not a revenue levy in either purpose or operation. It was obviously intended as a police regulation for reducing the number of mischievous dogs, getting clear of the worthless, and securing the owners of the most valuable and harmless against unauthorized and wanton destruction; and, thus interpreted, the ordinance is a license law, $2 the price of the license or 'tax' for the privilege, and the collar and stamp are passports for the security of registered dogs. Presuming that the owners of worthless or pestilent dogs would not pay such a tax for such a license, the expulsion or destruction of inferior or dangerous dogs, as well as protection to the useful class, was the constructive aim of this enactment by the council." *Mitchell* v. *Williams,* 27 Ind. 62; *Ex Parte Cooper,* 3 Texas Cr. App. 489.

In *Sentell* v. *New Orleans & Carrollton Railroad Company,* 166 U. S. 698, "a state statute providing that no dog shall be entitled to the protection of the law unless placed upon the assessment rolls, and that in a civil action for killing a dog the owner cannot recover beyond the value fixed by himself in the last assessment preceding the killing," was held to be within the power of the state. Mr. Justice Brown, in speaking for the court, said: "They (dogs) have no intrinsic value, by which we understand a value common to all dogs as such, and independent of the particular breed or individual. Unlike other domestic animals, they are useful neither as beasts of burden, for draught (except to a limited

extent), nor for food. They are peculiar in the fact that they differ among themselves more widely than any other class of animals, and can hardly be said to have a characteristic common to the entire race. While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and, above all, for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness.

"As it is practically impossible by statute to distinguish between the different breeds, or between the valuable and the worthless, such legislation as has been enacted upon the subject, though nominally including the whole canine race, is really directed against the latter class, and is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd. Acting upon the principle that there is but a qualified property in them, and that, while private interests require that the valuable ones shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police power of the several states. Laws for the protection of domestic animals are regarded as having but a little application to dogs and cats; and, regardless of statute, a ferocious dog is looked upon as *hostis humani generis,* and as having no right to his life which man is bound to respect."

Again he says: "Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals. Others, too small to attack these animals, are simply vicious, noisy and pestilent. As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible. In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance. Such legislation is clearly within the police power of the state. It ordinarily takes the form of a license tax, and the identification of the dog by a collar and tag,

upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon."

We have quoted at length from opinions in cases to show that the ordinances in question are valid police regulations, and the reason why they should be treated as such. But appellant says that in the agreed statement of facts, upon which the issues in the case were tried, the parties agreed that the sum required to be paid for the privilege of keeping a dog was a tax. That is true. But this statement in that respect was manifestly an expression of an opinion, and was not binding upon the court. The ordinances show that it was a license fee.

Judgment affirmed.