## EVANSVILLE AND SOUTHERN INDIANA TRACTION COMPANY *v.* SPIEGEL.

[No. 7,194.    Filed April 7, 1911.    Rehearing denied February 15, 1912.]

1. RAILROADS.—*Street.—Injuries to Travelers.—Negligence.—Complaint.*—A complaint alleging that defendant street railway company ran its car at a "great and unreasonable and dangerous rate of speed * * * until almost upon said child as he was crossing said track, and until it was too late to stop said car because of said defective appliance [hand-brake] * * *; that said

Evansville, etc., Traction Co. v. Spiegel—49 Ind. App. 412.

car * * * so run * * * and so * * * equipped, struck said child * * * and by reason of the absence of a proper and sufficient fender and life-guard said child was * * * instantly killed; that the death of said child was caused by the carelessness, negligence and recklessness of said defendant," sufficiently shows that such death was caused by the negligent acts of defendant. p. 415.

2. PLEADING.—*Certainty.—Common-Law Rule.*—At the common law a pleading was required to state the facts with sufficient certainty to enable the adverse party to understand them, the jury to ascertain .their truth, and the court to render judgment. p. 416.

3. TRIAL.—*Verdict.—Interrogatories.*—A general verdict for the plaintiff constitutes a finding in his favor on all the issues and is controlled by answers to the interrogatories to the jury only when they are in irreconcilable conflict therewith on any evidence admissible within the issues; and the evidence actually introduced cannot be considered in determining such question. p. 419.

4. NEGLIGENCE.—*Last Clear Chance.*—The person having the last clear opportunity of avoiding the injury in question, notwithstanding the negligence of others, is considered as legally responsible for such injury. pp. 419, 424.

5. RAILROADS. — *Street. — Contributory Negligence. — Last Clear Chance.—Interrogatories.*—In an action for the death of a boy, answers to interrogatories to the jury that such boy was contributorily negligent in riding his bicycle in front of defendant's moving car, do not control a general verdict for the plaintiff, since evidence was admissible to show that notwithstanding such contributory negligence the defendant might have been liable under the doctrine of the last clear chance. p. 419.

6. NEW TRIAL.—*Want of Evidence.—Interrogatories.—Consideration of.—Appeal.*—Where insufficiency of the evidence is made a ground for a new trial the court, in connection with the evidence, should consider as true the facts found in the answers to the interrogatories to the jury, where supported by any evidence, in determining whether the verdict is so sustained. Hottel and. Felt, JJ., dissent. pp. 420, 421.

7. APPEAL.—*Weighing Evidence.*—Where the evidence is in conflict the verdict is conclusive on appeal. p. 421.

8. RAILROADS.—*Street.—Travelers.—Going upon Track.—Contributory Negligence.*—A boy, thirteen years old, who, without excuse, rode his bicycle three feet in front of a swiftly moving streetcar plainly audible, and visible for three squares, is guilty of contributory negligence. pp. 422, 423.

9. RAILROADS.—*Street.*—*Travelers.*—*Care.*—The "look and listen" rule as applied to steam railroads is not, in strictness, applicable to companies operating street railways, nor to travelers using the streets, such companies being required to use such streets with due regard to all other users thereof. p. 423.

10. NEGLIGENCE.—*Last Clear Chance.*—*Street Railroads*—*Travelers.*—Where the evidence shows that the defendant street railway company was negligent in running its car at an excessive speed, and that a boy thirteen years old was guilty of contributory negligence in riding his bicycle on defendant's track three feet in front of such car, in the absence of excusing circumstances or of defendant's ability to avoid injury, no recovery can be predicated on the doctrine of the last clear chance. p. 425.

From Warrick Circuit Court; *Roscoe Kiper,* Judge.

Action by George P. Spiegel against the Evansville and Southern Indiana Traction Company. From a judgment on a verdict for plaintiff for $1,363, defendant appeals. *Reversed.*

*Robinson & Stilwell,* for appellant.

*Hiram M. Logsdon, Albert J. Veneman* and *Henry F. Fulling,* for appellee.

LAIRY, J.—This is an action brought by appellee against appellant for damages occasioned by the death of Carl Spiegel, the minor son of appellee, which death is alleged to have been caused by the negligence of appellant in operating one of its cars on Main street, in the city of Evansville, Indiana. The direction of Main street is a little east of north, and appellant company has a double street-car track near the center of said street. Williams street enters Main street from the east, at a point almost opposite to the place where Sycamore street enters it from the west, so that the south line of Williams street, at the point of its connection with Main street, is almost opposite the point where the north line of Sycamore street connects with it on the west. The accident in which Carl Spiegel lost his life occurred about noon on October 4, 1907. He came out of Williams street riding a bicycle,

and started diagonally across Main street toward Sycamore street, and was struck and killed by a street-car going south on the west track.

The complaint is in two paragraphs. The first paragraph alleges that appellant was negligent in running its car at a high and dangerous rate of speed through a thickly-populated part of the city; that the car was not equipped with emergency brakes or other proper brakes; and that it was not properly equipped with a fender and life guard.

The second paragraph of complaint alleges that the appellant was operating under a franchise granted by the city of Evansville, which provided that all cars operated by it should be provided with adequate life guards, and that another section of said franchise limited the speed of cars in business streets and in other thickly-populated streets to twelve miles an hour. It avers that appellant was violating both of these provisions of its franchise at the time of the accident and the injury complained of, in that it was running the car, which struck decedent, through a thickly-populated part of the city at a rate of speed in excess of twelve miles an hour, and that said car was not properly equipped with brakes and life guards.

A demurrer was overruled to each paragraph of the complaint, and this ruling of the court is assigned as error, and presents the first question for our decision.

The complaint is attacked on the ground that both paragraphs fail to show the causal connection between the negligence charged and the injury complained of. The 1. first paragraph of complaint contains the following allegations on this subject: "That said car was being run at said great and unreasonable and dangerous rate of speed, as aforesaid, until almost upon said child as said child was crossing said track; and until it was too late to stop said car before running upon said child by reason of said defective appliance and by reason of said car being so negligently and inefficiently equipped with a hand-brake only,

416 APPELLATE COURT OF INDIANA.

Evansville, etc., Traction Co. *v.* Spiegel—49 Ind. App. 412.

as aforesaid, there being no emergency brake on said car; and that said car then and there so run and operated and so negligently and defectively equipped struck said child with great force and violence, and threw him forward and down upon the track of said railway and by reason of the absence of a proper and sufficient fender and life-guard said child was thrown beneath said car and in front of the wheels and run upon and over, and then and there instantly killed; that the death of said child was caused by the carelessness, negligence and recklessness of said defendant.'' The second paragraph contains substantially the same averments. True, the complaint does not aver in so many words that the car struck the child because of the high rate of speed at which it was running, and by reason of the inability of the motorman to stop it on account of the defective brake with which it was equipped, but it is alleged that the car was running at a high and dangerous rate of speed until almost upon the child, and until it was too late to stop said car because it was so inefficiently equipped with a hand-brake only, and that said car did strike said child and throw it to the track, and that the car ran upon and over it causing its death, and that the death of said child was caused by the negligence of defendant. From these facts it appears with sufficient certainty that the injury and death of Carl Spiegel was the result of the negligent acts of appellant as charged in the complaint. The rule in favor of pleadings assailed on the ground of uncertainty is a liberal one. The rule at common law is thus stated: ''The principal rule, as to the

2. mode of stating the facts, is, that they must be set forth with *certainty;* by which terms is signified a clear and distinct statement of the facts which constitute the cause of action or ground of defense, so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and the court who are to give judgment.'' 1 Chitty, Pleading (7th Eng. ed.) *256. Tested by this rule, we think that the com-

plaint is clearly sufficient, and that the demurrer to each paragraph of the complaint was correctly overruled.

The case was put at issue by an answer in general denial and was submitted to a jury for trial. The jury returned a general verdict in favor of appellee, and with the general verdict returned answers to interrogatories. A motion by appellant for judgment in its favor on the interrogatories, notwithstanding the general verdict, was overruled, and this ruling is assigned as error.

The material facts disclosed by the answers to interrogatories are as follows: The accident for which this action is brought occurred on Main street where it intersects with Williams and Sycamore streets. At this point Main street runs from a little west of south to a little east of north, and there are two street-car tracks in said street. Main street is practically level for three or four blocks north and south of the place where the accident occurred, and is paved with brick. Decedent was thirteen years old at the time the accident happened. He had possession of his senses of sight and hearing, and was a boy of ordinary intelligence and judgment, and of average strength for one of his age. He was riding a bicycle with rubber tires, and was carrying a basket in one hand and holding the handle bar of the bicycle with the other. He was an experienced bicycle rider. When he came out of Williams street he went diagonally across Main street toward Sycamore street. He came out about the middle of Williams street, and was riding at a moderate rate of speed. He had frequently crossed Main street at and near the place of the accident, and was familiar with the location and surroundings at that place, and knew that cars frequently passed on Main street. The car that struck him was going toward the river on the west track, and there was no car passing on the other track at the time and place. There was nothing to obstruct his view of the approaching car at any time after he rode out of Williams street onto

418     APPELLATE COURT OF INDIANA,

Evansville, etc., Traction Co. *v.* Spiegel—49 Ind. App. 412.

Main street until he was struck by the car. If decedent had looked toward the north on Main street at the time he came out of Williams street into Main street he could have seen a car for a distance of two blocks, provided nothing obstructed his view. He could have heard the car approaching for a distance of half a block, had he listened, but there were noises of pedestrians and vehicles in the vicinity that would prevent him from hearing the approaching car. The car was eleven feet high and nine feet wide. Decedent turned on the west track at a point in a straight line between the middle of Williams street and the middle of Sycamore street, and about three feet in front of the car which struck him. There is no evidence as to how far the car was from the point of collision at the time decedent came out of Williams street onto Main street, and the width of Main street is not shown by the evidence. The car was stopped at John street, and was running at a speed of from twelve to fifteen miles an hour when the collision occurred. The motorman sounded the gong before he reached Williams street, and sounded it again after he reached Williams street and before the car struck decedent. There is no evidence that decedent looked toward the north on Main street at any time after he came out on Williams street. When he reached the space between the two tracks there was another bicycle rider coming from the opposite direction in the space between the two tracks, and he was attempting to pass this bicycle rider immediately before he was struck by the car. The motorman reversed the power on his car immediately before he struck decedent, and there was no more effective means of stopping said car. The motorman did all within his power to stop the car when he was within three feet of decedent, but he should have reduced the speed of the car before reaching the intersection of Williams and Main streets.

On behalf of appellant, it is urged that its motion for judgment on the interrogatories, notwithstanding the general

verdict, should have been sustained, for the reason that these answers show that decedent was guilty of negligence contributing to his death. The general verdict in favor of plaintiff is a finding of every material fact necessary to a recovery. The special findings of the jury will overthrow the general verdict only when both cannot stand; and this antagonism must be apparent on the face of the record beyond the possibility of being removed by any evidence admissible under the issues made by the pleadings. The evidence actually introduced cannot be considered in passing upon this question. *Cox* v. *Ratcliffe* (1886), 105 Ind. 374; *Indiana, etc., Gas Co.* v. *Long* (1901), 27 Ind. App. 219.

Under the issues formed by the pleadings in this case, evidence might have been introduced that would bring the case within the operation of the doctrine known as the "last clear chance." This doctrine is clearly stated by a writer in 2 Law Quarterly Review p. 507 as follows: "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." This doctrine has been frequently recognized and applied by our courts. *Grass* v. *Fort Wayne, etc., Traction Co.* (1908), 42 Ind. App. 395; *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202; *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Krenzer* v. *Pittsburgh, etc., R. Co.* (1898), 151 Ind. 587, 68 Am. St. 252; *Indianapolis, etc., R. Co.* v. *Pitzer* (1887), 109 Ind. 179, 58 Am. St. 387; *Indianapolis St. R. Co.* v. *Bolin* (1906), 39 Ind. App. 169.

Even though it be conceded that the answers to the interrogatories show that the plaintiff's decedent negligently approached and entered upon appellant's track in front of an approaching car, and thus negligently exposed himself to the danger of a collision, this would not necessarily preclude a recovery for injury result-

ing from appellant's negligence. Answers to interrogatories showing such facts would not overthrow a general verdict in favor of the plaintiff, for the reason that evidence may have been introduced proving, or tending to prove, that after said decedent was in the position of danger in which he had so negligently placed himself, the defendant knew of his perilous position, or might have known it by the exercise of ordinary care, in time to prevent the injury, and that it negligently failed to take advantage of the last clear chance to prevent the injury. It is the duty of this court to reconcile the interrogatories with the general verdict, if they can be so reconciled by any evidence which might have been introduced within the issues; and, to this end, the court, in ruling upon this motion, will treat the case as though this evidence had been introduced and acted upon by the jury. In view of what we have said, we are of the opinion that the answers to the interrogatories are not in irreconcilable conflict with the general verdict and the motion of appellant for judgment in its favor on such interrogatories, notwithstanding the general verdict, was properly overruled.

Several reasons were assigned by appellant in its motion for a new trial. The first one presented and relied on by appellant is that the verdict is not sustained by sufficient evidence. In passing on this motion, it is the duty of the court to consider the answers to the interrogatories in connection with the evidence for the purpose of deciding whether the verdict is sustained by the evidence. *Terre Haute, etc., R. Co.* v. *Clark* (1880), 73 Ind. 168.

The jury found both by its general verdict and by the answers to interrogatories that defendant was negligent. The answers to the interrogatories show that its car was being run at the rate of fifteen miles an hour at the time of the accident, a rate which was three miles in excess of the rate permitted by the ordinance. There is much conflict in the evidence as to the speed of the car, some of the witnesses stating that it was running at a much greater speed

NOVEMBER TERM, 1911. 421

Evansville, etc., Traction Co. *v.* Spiegel—49 Ind. App. 412.

and some that it was running much slower. Where
7. the evidence is conflicting, the verdict of the jury is
conclusive on this court.

We will next consider whether the undisputed evidence in
the case, considered in connection with the interroga-
6. tories, show that decedent ·was negligent in going
upon appellant's track, where he was killed.

The evidence in reference to the conduct of decedent from the time he came out of Williams street until he was struck by the car is not in serious conflict. The jury have found the facts showing this conduct in answers to certain interrogatories, and the facts so found are fully sustained by the evidence. The jury find upon this question that decedent came out of Williams street, riding a bicycle, and started diagonally across Main street toward Sycamore street; that he was carrying a basket in his left hand, had his right hand on the handle-bar of the bicycle, and was traveling at a moderate rate of speed; that he had frequently crossed Main street at and near that place, and was familiar with the location and surroundings, and knew that cars frequently passed on Main street; that there was nothing to obstruct his view of the approaching car at any time after he rode out of Williams street into Main street, and no other car was passing at the time; that if he had looked north on Main street at any time after he came out of Williams street he could have seen a car for two blocks, and that he could have heard the car for half a block if he had listened, but that there were noises of pedestrians and vehicles in the vicinity which would have prevented him from hearing the car; that when he reached the space between the two tracks he was met by another bicycle rider coming from the opposite direction in the space between the tracks, and that he was attempting to pass this bicycle rider when he went upon the west track; and that he went upon the west track at a point in a straight line between the middle of Williams street and the middle of Sycamore street and about three

422    APPELLATE COURT OF INDIANA,

Evansville, etc., Traction Co. *v.* Spiegel—49 Ind. App. 412.

feet in front of the car. These facts having been found by the jury will be taken as true, so far as there is evidence to sustain them, and the fact that there may have been conflicting evidence as to some or all of such facts will not affect their verity. In deciding whether the general verdict is sustained by the evidence, the facts found by way of answers to interrogatories will be treated the same as though they were established by the undisputed evidence, unless some of the facts so found are unsupported by any evidence.

There is some conflict in the evidence as to whether decedent rode his bicycle in a straight line from the point where he entered upon Main street toward the middle of

8. Sycamore street until he went upon the track, or whether he rode south in the space between the two tracks for a short distance before he went upon the west track, but this is not material. In either view of the case, it appears from this evidence, when considered in connection with the answers to the interrogatories, that he rode half way across Main street in plain view of the approaching car, and went upon the street-car track within three feet of the front end of such car, while it was moving at the rate of twelve or fifteen miles an hour. At that point Main street is shown by the map introduced in evidence to be about sixty feet in width, and the answers to interrogatories show that it was practically level, and that there was nothing to obstruct decedent's view of the approaching car. The evidence shows no conditions or circumstances surrounding the decedent just before the accident which could properly be considered by the jury as an excuse for decedent's apparent failure to observe or heed the approach of the car. Nothing is shown that could have obstructed his view or distracted his attention. While some of the witnesses testified that this was a busy street about the noon hour, and that many people, on foot and in wagons and other vehicles, passed the point where the accident happened, about that hour, nothing is

NOVEMBER TERM, 1911.          423

Evansville, etc., Traction Co. *v.* Spiegel—49 Ind. App. 412.

shown as to conditions and surroundings at the time the accident occurred. In the light of these facts we cannot think that the conduct of the decedent in approaching and entering upon the street-car track in the manner shown was consistent with due care on his part. We recognize that the rule of law which requires a person about to cross the track of a steam railroad to look and listen for approaching trains in order to absolve himself from the charge of contributory negligence does not apply in all its strictness to persons traveling along, or crossing street railways. Street railways are constructed along and operated in streets, and must be so operated with due regard to the rights of others using said streets for other modes of travel, and for just reasons the same degree of care is not required of one in crossing a street-car track as is required of one in crossing the track of a steam railroad. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *White* v. *Worcester, etc., St. R. Co.* (1896), 167 Mass. 43, 44 N. E. 1052.

This rule does not, however, absolve persons going upon or across the tracks of street railways from all care. A person about to cross a street-car track must use ordinary care in view of all the circumstances and surroundings. He must make reasonable use of his eyes to observe the approach of cars, and where there is nothing to obstruct his view, or to distract his attention, and he goes upon the track immediately in front of a moving car, he is guilty of negligence. *Indianapolis St. R. Co.* v. *Zaring* (1904), 33 Ind. App. 297; *Citizens St. R. Co.* v. *Helvie* (1899), 22 Ind. App. 515.

In this case we cannot escape the conclusion that appellee's decedent was negligent in approaching and entering upon appellant's street-car track. where he received the injury that caused his death.

The question of last clear chance yet remains to be considered. This doctrine finds its most frequent application in cases where the negligence of the defendant is shown, and

where it also appears that the plaintiff, or decedent,
4. by a want of due care on his part placed himself in
a position of imminent peril exposing him to
danger as a result of the negligence of the defendant. In
such a case it may be shown that after the plaintiff, or dece-
dent, had thus negligently exposed himself to the danger,
circumstances or conditions existed, or then arose, which
imposed upon the defendant or its agents a special duty to
protect him from injury and afforded an opportunity to do
so, and that such duty was not observed and the opportunity
neglected. When this is shown, the negligent conduct of the
plaintiff is held to be, not the cause, but a condition of the
situation with reference to which the defendant must act.
In the case of *Louisville, etc., R. Co.* v. *East Tenn., etc., R.
Co.* (1894), 60 Fed. 993, the doctrine is thus stated: "If,
with a knowledge of what plaintiff has done, or is about to
do, the defendant can by ordinary care, avoid the injury
likely to result therefrom, and does not, defendant's failure
to avoid the injury is the last link in the chain of causes,
and is, in law, the sole proximate cause. The conduct of the
plaintiff is not, then, a cause, but a condition of the situa-
tion with respect to which the defendant has to act."

Contributory negligence, when shown, is a complete de-
fense to a case founded upon negligence of the defendant.
To make out a case of contributory negligence, two elements
must be established by the evidence: (1) that the plaintiff
was negligent, and (2) that this negligence proximately
and directly contributed to the injury. If the jury found
from the evidence in this case that after the motorman dis-
covered the peril of the plaintiff's decedent to which his
negligence had exposed him, or was about to expose him,
such motorman had time and opportunity to prevent the
injury by the exercise of precautions to that end, and he
failed to do so, then contributory negligence on the part of
the decedent is not established. In such a case the negli-
gence of decedent is established, but it is not shown to have

directly and proximately contributed to his injury, and therefore the second element is wanting.

The doctrine of last clear chance is not an exception to the rule relating to contributory negligence. Facts which render the doctrine of last clear chance applicable in any case, do not tend to prove that the plaintiff was not negligent, but do tend to prove that the negligence of the plaintiff, which placed him in a situation of danger, was not the proximate cause of his injury, but was only the remote cause. *Grass v. Fort Wayne, etc., Traction Co., supra.*

In the case of *Indianapolis St. R. Co.* v. *Schmidt, supra,* it is said "that the negligence of the plaintiff ceases to be the proximate cause of the injury when the defendant has opportunity to prevent it, and, with knowledge of the exposed condition of the plaintiff, negligently refuses to do so, is well settled in this State."

In considering contributory negligence with reference to the doctrine of last clear chance, it is important to distinguish the facts tending to show want of due care on the part of plaintiff from those tending to show that such want of care on his part directly and proximately contributed to the injury. In a case like this, proof of facts tending to show that decedent approached and entered upon defendant's street-car track without taking any precaution for his own safety, makes out a *prima facie* showing upon the question of his negligence; and proof of facts tending to show that by reason of such negligence he was placed in a position where he was exposed to the danger of being injured, and where he was actually injured by reason of defendant's negligence, would make out a *prima facie* showing that the negligence of decedent directly and proximately contributed to his injury. Such a showing upon both of these questions would constitute a *prima facie* case of contributory negligence. This case may be met by evidence tending to rebut the showing made upon either or both of the con-

stituent elements of contributory negligence. The showing upon the first element, before referred to, may be rebutted by evidence tending to show that decedent used due care, and the showing upon the second element may be rebutted by evidence tending to prove that after decedent had by his own negligence become exposed to imminent and impending danger, defendant had it within its power to prevent the injury by the exercise of some precaution on its part which it failed to exercise. Evidence tending to establish "last clear chance," does not have the effect of confessing and avoiding contributory negligence, but its purpose and effect is to show that plaintiff's negligence was not the proximate cause of his injury, and thus to rebut the evidence tending to establish that fact.

The defendant in this case, as shown by the interrogatories considered in connection with the undisputed evidence, made out a *prima facie* case of contributory negligence upon both its essential elements. It was incumbent upon plaintiff to introduce the evidence, if such had not already been introduced, tending to prove, either that his decedent used due care, or that under the circumstances, facts existed which called for the application of the doctrine of "last clear chance." 8 Ency. Ev. 854; *Gibson* v. *Harrison* (1901), 69 Ark. 385, 63 S. W. 999, 54 L. R. A. 268; *Koegel* v. *Missouri Pac. R. Co.* (1904), 181 Mo. 379, 80 S. W. 905; *Luna* v. *Missouri, etc., R. Co.* (1903), 73 S. W. (Tex. Civ. App.) 1061. If there is a total failure of evidence upon both of these propositions, the *prima facie* case of contributory negligence made by appellant must prevail; but if there is evidence tending to show, either that plaintiff used due care, or if he was negligent that such negligence was not the direct and proximate cause of his injury, but only the remote cause, then the question of contributory negligence was for the jury, and the burden of this issue remained with the defendant as to both of the constituent elements of con-

tributory negligence. *Grass* v. *Fort Wayne, etc., Traction Co., supra;* 1 Elliot Evidence §139.

We have already stated that there is no evidence tending to show due care on the part of decedent, and we will now consider the evidence bearing upon the other questions. In order to make such a showing as calls for the application of the doctrine of last clear chance, the evidence must show, or tend to show, (1) that, at some appreciable time before the accident happened, decedent was in a place of imminent and apparent danger, or that his appearance and conduct was such as to indicate to a man of ordinary prudence occupying the position of the motorman that he was about to place himself in such a position; and (2) that during the time which intervened after this situation arose and before the injury the motorman could have prevented or mitigated such injury by the exercise of due care, and decedent could not.

The only evidence bearing upon this question that we have been able to find is the evidence of the motorman. He said: ''I saw him come out of Williams street, right onto Main. I was right down here pretty close to him. He had a basket in his left hand, and had his right hand on the handlebar of the bicycle. He was headed in the direction of Sycamore street. I saw another boy on a bicycle coming up Main street. When he got up right close to the boy, it seemed like he was going to run into that boy, and they were going to have a collision, and he whipped his wheel right square around on my track. I don't think I was more than three feet away, might say right against him when he got on my track. I did not reverse the power 'till he got on the track. I did not use the brake at all before the accident happened.'' The jury in the answers to interrogatories found that decedent was going diagonally across Main street toward Sycamore street at a moderate rate of speed, as described by the motorman, that he met another bicycle rider in the space

between the two tracks, and that he turned onto the west track at a point only three feet in front of the car. The map introduced in evidence shows that it is about thirty or thirty-five feet from the south line of Main street to the place where the accident happened, although the jury found that there was no evidence as to the exact distance. The jury found that there was no evidence showing how far the car was from the place of collision when decedent entered Main street, and we have been unable to find any evidence on this question. The jury found that there was no more effective means of stopping the car than by reversing the power. There is no evidence tending to show how far the car was from the decedent at the time the motorman saw that the bicycles were likely to collide. There is no evidence showing that decedent, as he approached the track, was looking in the opposite direction from the car, or that he seemed to be abstracted or oblivious of his surroundings. There is nothing in the evidence showing that there was anything to indicate that decedent was likely to go upon the track in front of the car, except the general direction in which he was traveling.

This evidence does not prove, or tend to prove, a state of facts to which the doctrine of last clear chance is applicable. The first essential thing that the evidence must prove or tend to prove is that the decedent was in a situation of apparent and imminent danger at some appreciable time before the injury. If this evidence tends to show that Carl Spiegel was in such a place of apparent danger, when was it in reference to the time of the injury? Was it when he rode his bicycle upon the track within three feet of the front end of the moving car? If so, there was clearly no time within which the motorman could have prevented the injury. Was it when the motorman saw that there was a bicycle approaching from the south, and that there was likely to be a collision between the two bicycles? If so, there is no evidence tending to prove how far the car was from the decedent at that time, or that the motorman by any means could have prevented

the injury. Was it when decedent was approaching the street-car track from Williams street? There is nothing in the evidence tending to show that at that time there was any apparent danger that decedent would go upon the track in front of the car; neither is there any evidence to show how far the car was from the place of the accident at the time decedent entered upon Main street. If there had been evidence tending to show that Carl Spiegel, as he approached the track was apparently abstracted and oblivious of his surroundings, and that he was moving in the direction of the track at such a speed as would likely carry him in front of the car and into dangerous proximity to it, and that the motorman, regardless of this apparent danger, took no steps to stop the car or slacken its speed, then we would have a different case presented. In such a case, it would be for the jury to say whether the negligence of the defendant directly and proximately contributed to decedent's injury, or whether it was only the remote cause; but, in this case, there is no evidence upon which the application of this doctrine can be predicated. We therefore conclude that appellant's motion for a new trial should have been sustained.

Other questions arising upon the motion for a new trial have been presented, but as these questions may not arise upon a second trial of this case they are not considered.

The judgment of the trial court is reversed with directions to grant a new trial.

## DISSENTING OPINION.

HOTTEL, J.—I cannot concur in that part of the majority opinion in this case expressed in the following words: "In deciding whether or not the general verdict is sustained by the evidence, the facts found by way of answers to interrogatories will be treated the same as though they were established by the undisputed evidence, unless some of the facts so found are unsupported by any evidence."

I dissent from this declaration, because I believe

(1) that it is wrong in principle;

(2) that it gives to the answers to such interrogatories an effect and influence upon and against the general verdict not provided or contemplated either by the letter or spirit of §§572, 573 Burns 1908, Acts 1897 p. 128, §1 and §547 R. S. 1881, which alone furnish the right to propound such interrogatories and define the influence and control the answers thereto shall have upon the general verdict;

(3) that it violates thoroughly established and universally recognized principles long ago announced by the Supreme Court, and continuously followed by that court and this court, without question and without change or modification. Said announcement is wrong in principle, because it, in effect, declares that this court, in determining whether there is any evidence to sustain the verdict, shall be governed, not by its own investigation of the evidence and its independent judgment based thereon, but, to the extent that the jury has expressed its opinion on the subject of the weight of the evidence in the answers to interrogatories, where there is any evidence to support such opinion, this court shall adopt it, and be controlled thereby. Such announcement, in our opinion, confuses two essentially different subjects, viz.: the evidence in the case, and the finding of the jury as to what the evidence shows.

When the court is called upon to determine what the special finding of the jury is upon the facts submitted to it by the interrogatories, it necessarily determines said question from the answers to such interrogatories, independent of and regardless of what the evidence may show upon such subject. Upon the other hand, when such court is called upon to determine whether the verdict is sustained by sufficient evidence, it should look to the evidence alone and give no thought or attention to any finding the jury may have made upon any of the facts to which such evidence was addressed.

That we should look to the evidence alone in determining its sufficiency to sustain the general verdict is, we think, made evident by the manner and the language in which the question is presented to the court for its consideration. This question is presented to this court in one way only: by assigning as one of the grounds for a motion for new trial that "the verdict is not sustained by sufficient evidence," not that "said verdict, when considered in connection with the answers to interrogatories, is not sustained by the evidence." Can it be said that this court can determine whether there is any evidence to sustain the several essential facts which the general verdict finds to be true, by looking to see how some other tribunal has determined the question of the preponderance of the evidence as to some or all of such independent facts? Shall the conscience and judgment of this court in determining said question be influenced or controlled in whole or in part by the conclusion of some other tribunal on a different question? Can this court say, under its oath, that there is no evidence to sustain the verdict, simply because a jury has said the preponderance of the evidence is against the verdict?

In this connection it is important to keep in mind the difference between the question which this court is called upon to determine and that which the jury is called upon to determine by its answers to interrogatories. This court determines simply whether there is any evidence to support each material fact represented-by the general verdict, while the jury is called upon to say in its answer to each interrogatory propounded to it, which way the evidence preponderates as to such particular fact inquired about. If the judgment and conscience of this court is to be bound and controlled by the judgment and conclusion of some other tribunal, it should at least be confined to the same question passed upon by such other tribunal.

We said also that the rule declared by the majority opinion violates the letter and spirit of the sections of the statute

providing for interrogatories to the jury, and for motion for judgment thereon. Section 572, *supra*, is as follows: ''That in all actions hereafter tried by a jury, the jury shall render a general verdict, but in all cases when requested by either party, the court shall instruct them when they render a general verdict to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories on any or all the issues in the cause, and this shall be the only form of verdict submitted to or rendered by the jury in the cause: *Provided,* The provisions in this section shall not apply to cases in equity. These interrogatories are to be recorded with the verdict.'' Section 573, *supra*, provides that ''when a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.'' These provisions of the statute indicate the sole and only purpose of such interrogatories, and that is, that they may be submitted by a party desiring a special finding upon any particular facts within the issues, and the jury may be required to answer them and return them with its verdict, to the end, only, that if there be irreconcilable conflict between such answers and the general verdict, such answers will control, and the court must give judgment thereon.

They owe their existence to statutory enactment; and their purpose and the scope of their application is defined and limited thereby. There is no provision for their consideration in connection with the evidence, and such consideration is neither within the spirit nor letter of said sections.

We have said, also, that said rule declared by the majority opinion herein violates well-established principles announced by the Supreme Court and this court. Upon this contention we submit that in determining whether the verdict is sustained by sufficient evidence, the Supreme Court and this court have so frequently said, and repeated in one form of expression and another, that if there be any evidence to support each of the material averments of the pleading, upon

which such general verdict is based, that such verdict will not be disturbed by the appellate tribunal, that to furnish a complete list of such decisions would be the equivalent of enumerating all the cases that have come to said courts since their organization, which contain a presentation of the question of the sufficiency of the evidence to sustain the verdict. If, however, the rule announced in the majority opinion is to obtain, then the former declarations of said courts must be completely changed and modified, and instead of saying, as heretofore, that "if there be any evidence to support the several averments of the pleading upon which the general verdict rests, such verdict will not be disturbed by the appellate tribunal," both courts must now say: "If, after subtracting from the evidence that part covered by the facts upon which the jury by its answer to interrogatories found against such general verdict, there be any evidence left to support each of the material averments of the pleading upon which such verdict rests, it will not be disturbed by such court."

Again, both courts of appeal of this State, as well as the courts of other jurisdictions which have statutes controlling said question similar to our own, have declared that every presumption is indulged in favor of the general verdict.

In fact the general verdict has, by the Supreme and Appellate courts, always been treated as a finding upon every essential averment of the pleading upon which it rests, just as much as the answers to interrogatories are treated as findings upon the particular facts found by such answers, with the presumption always in favor of the finding of the general verdict, except when it is being considered upon the question of whether it shall stand as against a motion for judgment on the answers to interrogatories, and then, by reason of the statute giving such answers the preference, the general verdict must yield, where there is irreconcilable conflict between the two. Such presumption in favor of the general verdict

can no longer exist, if the rule announced in the majority opinion is to obtain.

Barring the errors of law that may be carried into a general verdict, there are but two ways of attacking it: (1) By the ruling on the motion for judgment on the answers to the interrogatories; (2) by a motion for a new trial, on the ground of the insufficiency of the evidence. Upon the first ground, if the answers to the interrogatories are in irreconcilable conflict with the general verdict they must prevail, and the general verdict be set aside. In such case the answers to the interrogatories are given the preference by virtue of the statute providing for the motion for judgment on such answers.

Under the old rule so often announced by the Supreme Court and this court, when a consideration of the evidence was reached, the general verdict was taken as a conclusive finding upon every averment of the pleading upon which it rested that had any evidence for its support. But, under the announcement before made, no such presumption is to be indulged, and in considering the evidence the court now; instead of determining for itself whether there is any evidence to support each averment of the pleading upon which the general verdict rests, must look to the answers to interrogatories, and must ascertain what is left to support the general verdict after giving such answers the preference as to all facts adverse to the verdict covered by such answers upon which there was any evidence.

So in each of the only two ways of attacking the general verdict, instead of indulging every presumption in its favor, we have, in each instance where there was conflict, given the answers to interrogatories the preference, and required the general verdict to yield. The only correct form of expression hereafter upon the subject of presumption, in connection with the general verdict, if the announcement by the majority of the court is to obtain, must be: Upon a motion for judgment on answers to interrogatories, where there is

irreconcilable conflict between such answers and the general verdict, which is a finding upon all the essential facts of the pleading or pleadings upon which it is based, the answers to interrogatories, by virtue of the statute upon which such motion is based, must control, and the general verdict yield thereto. And when such general verdict is being considered with a view of determining whether it, is sustained by the evidence, such interrogatories must be again considered, there being now no presumption in favor of such general verdict except that it is a finding on all the essential facts of the pleading or pleadings, upon which it rests subject to the condition that as to all such facts found by the answers to interrogatories such answers have in their favor not merely a presumption, but where they have any evidence for their support they shall control such general verdict.

We recognize that it may happen, but rarely we think, that injustice may result from the application of the present rules relating to questions presented by the motion for judgment on the answers to interrogatories, and the sufficiency of the evidence, and that it was to avoid such results that the announcement by the majority of the court was made. The hardship which it is proposed to remedy by the majority opinion is such as may result where there are two or more paragraphs of complaint. To illustrate: In such a case, a motion is made for judgment upon the answers to interrogatories. This court finds, in considering such motion, that it is in irreconcilable conflict with a verdict predicated upon any paragraph but one. Under the rule, as frequently announced by the Supreme Court and this court, we must presume that the general verdict finds each essential fact of each of said paragraphs to be true, and we therefore overrule the motion for judgment on such answers. Then when we reach the motion for a new trial we find that there is a total lack of evidence to sustain the paragraph, which we were required to assume as proved in considering the motion for judgment on the answers to interrogatories, but we find

that there is evidence to sustain the paragraphs which we found were defeated by the answers to interrogatories.

Apparent inconsistency results in such case from refusing to sustain the motion for new trial on the ground that there is evidence to sustain those paragraphs which we have before said were defeated by the answers to interrogatories. It was doubtless to avoid such inconsistency, and the apparent injustice that may result therefrom, that the majority of the court was led to make the announcement it did.

No legal principle or rule of human conduct can be absolutely perfect. Occasional hardship results from the most perfect rules that the ablest jurists of the world have been able to formulate. That a situation should result, of the character assumed for the illustration given, necessitates the assumption that both the jury and the trial court shall violate their sworn duty, and the violation on the part of one or both must be with knowledge.

It is hardly possible to make rules that will meet every emergency of this character, but conceding that the assumed condition is one which should not occur, it must be conceded that it is better to prevent error, than to make and then attempt to correct it. The right is never best obtained by committing two wrongs.

The supposed condition and hardship resulted not from any erroneous assumption in considering the sufficiency of the evidence. The whole trouble, if any, resulted in the consideration of the motion for judgment on the answers to interrogatories, and in the assumption indulged, that the verdict was a finding that every material averment of each paragraph of the complaint was proved, in the face of the evidence in the record to the contrary.

We know, as a matter of fact, that such assumption was inconsistent with the law controlling the jury in reaching its verdict, because we know, as a matter of law, that the verdict was not required to be upon all of the paragraphs of the complaint, but, upon the contrary, that the trial court,

if requested to do so, was required to tell the jury that a finding upon any one of the paragraphs was sufficient to warrant a verdict for the plaintiff.

It is evident, therefore, that the apparent error and hardship, resulting in the assumed case, was due to the erroneous assumption of the court in the first instance that the general verdict was a finding in favor of the plaintiff upon every material averment of each of the paragraphs of his complaint when the evidence was before the court that showed conclusively that such verdict could not rest upon one of the paragraphs thereof.

The assumption indulged by the court that such verdict was a finding in plaintiff's favor on each of the paragraphs, while in contradiction of the principle of law which the trial court must have announced to the jury directing it to find for the plaintiff, if he had proved either paragraph of his complaint, is, nevertheless, supported by numerous other decisions of the Supreme Court and the Appellate Court, which hold, in effect, that in considering a motion for judgment on the answers to interrogatories such courts will look only to the pleadings, the general verdict and the answers to interrogatories. *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25.

The correctness of the rule laid down in these cases cannot be questioned when applied to a case where the evidence is not in the record, and for the same reason we think the court, in considering the sufficiency of the evidence to sustain the verdict, should be limited to the evidence alone. Where, however, the court has the evidence before it, by which it can know that the verdict in fact rested upon only a part of the paragraphs of the complaint, a more serious question arises, and whether, when considering the motion for judgment on the answers to interrogatories, the rule, indulging the presumption that the verdict is a finding on each of the material averments of each of the paragraphs of the

pleading upon which it is based, should be limited in its application so as to apply only to cases where the evidence is not in the record, and cases where the attention of the court is not called to the absence of proof upon any particular paragraph or paragraphs, is a question open to doubt.

In this connection we suggest that the uniformity of the decisions as to the wisdom of each of said rules, and their long-continued application without modification or change, suggest caution in the matter of any such change or modification of either, and this is especially true in view of the very exceptional cases in which they work any even apparent hardship.

We do say, however, that to us it seems the part of wisdom that if any correction or change is to be made we should go back to the source of the apparent error, and refuse to commit it in the first instance, rather than violate long-settled and well-established principles, by refusing to give to the general verdict and the evidence the importance heretofore attached to them, and thereby, in the effort to correct the apparent error, commit another that will, in our judgment, be more far-reaching in its scope and extent than the one attempted to be corrected.

Felt, J., concurs in dissenting opinion.